[No. 18132.  In Bank, October 27, 1893.]

## A. MONTGOMERY, Appellant, v. ALBARNUS L. SAYRE, Executor, etc., Respondent.

Suretyship for Maker and Indorser of Note—Pleading.—A complaint averring that a mining company executed its note to plaintiff, which was indorsed by a third party, and that at the time of the delivery of the note and to secure the payment of the same, there was delivered to plaintiff by way of pledge, all of the capital stock of the mining company and a mortgage on its mine, and a note from the testator of whom defendant was the executor for a smaller sum bearing the same date with the larger note and mortgage, upon which smaller note the action is brought after foreclosure of the mortgage on the mine, and the docketing of a deficiency judgment against the corporation and the indorser of the larger note, and averring that there remains due and unpaid on the note and judgment a sum greater than the amount of the smaller note, and that the corporation has no other property, and that its capital stock is valueless, sufficiently shows that the defendant's testator was a surety both for the mining company and for the indorser of its note.

Id.—Exoneration of Surety—Release of Indorser.—Where the note of a surety is given to secure payment of a larger note both by the maker and indorser of the larger note, the surety is exonerated, if the payee has released such indorser from all liability under a deficiency judgment rendered against the indorser, after foreclosure of a mortgage given by the maker to secure the larger note.

Id.—Sale of Land at Less than Value.—The surety is also exonerated if the payee of the larger note having a judgment lien upon the land of the indorser, which, if sold at its real value, would have realized a sufficient amount of money to pay the judgment, united with the indorser to sell and convey the land at private sale for less than its real value.

Id.—Evidence—Determination of Market Value.—In determining the real value of the land thus sold, the jury are not confined to evidence of what it would have brought at a forced sale for cash, at public auction, and the court may admit evidence showing the terms of credit upon which tracts of land in the region of the land in question were usually sold, and what was its fair market value at the time of the private sale, the question before the jury being as to the difference between the amount for which it was sold and its fair market value at that time.

Id.—Evidence of Value at Other Dates—Discretion.—Evidence of value for short periods, before and after the date in question, may be allowed in the discretion of the court, where such discretion is not abused.

Appeal from a judgment of the Superior Court of Fresno County, and from an order denying a new trial.

The facts are stated in the opinion of the court upon this appeal, and in the opinion rendered upon the former appeal, reported in 91 Cal. 206.

*W. F. Goad*, and *Arthur Rodgers*, for Appellant.

*George A. Nourse*, for Respondent.

McFARLAND, J.—This is an appeal by plaintiff from a judgment in favor of defendant, and from an order denying a motion for a new trial. The main history of the case is stated in the opinion of this court upon a former appeal (*Montgomery* v. *Sayre*, 91 Cal. 206); and it need not be repeated here.

The first question in the case is whether or not Sayre, deceased, made the ten thousand dollar promissory note to appellant sued on as surety for W. S. Chapman. Respondent contends that this question was decided affirmatively by this court on the former appeal, and that such decision is the law of the case. This court did say in its opinion on that appeal that "Sayre was, in law, a surety"; but we will not inquire into the somewhat complicated question whether that statement was necessary to the determination of that appeal, and therefore the law of the case; because we think that the correctness of that statement otherwise appears. Indeed it appears from the complaint itself, which includes the presentation of the claim to the executor.

It is not pretended in the complaint that the Sayre note for ten thousand dollars was not given as security in some form, or that an action could be maintained upon it as on any ordinary promissory note, without averring extrinsic facts other than those appearing upon its face. The complaint avers that on April 19, 1884, the Pioneer Mining Company, a corporation, made and delivered to appellant (Montgomery) its promissory note for one hundred and ten thousand dollars, and "that said note was indorsed by Wm. S. Chapman." (The evidence shows that the indorsement was preceded by the words: "Demand, notice, and protest waived April 19, 1884.") It is then averred: "That at the time of said delivery of said note, *and to secure the*

*payment of the same*, there was delivered to plaintiff by
way of pledge all the capital stock of said corporation
except thirty shares thereof, and said corporation did
execute to plaintiff its mortgage on the Pioneer mine in
Sierra county, in said state, and said A. L. Sayre, now
deceased, who was then living, did make, execute, and
deliver his promissory note, hereafter designated as the
'Sayre note,' bearing even date herewith, for the sum
of ten thousand dollars ($10,000"), the same being the
note here sued on. It is then further averred that sev-
eral payments were made from time to time on said
note for one hundred and ten thousand dollars; that
afterwards plaintiff foreclosed said mortgage on the
Pioneer mine; that the proceeds of the sale of the mine
under said foreclosure was applied to the payment of
said note, but was not sufficient to satisfy it; that a de-
ficiency judgment was entered and docketed against
said corporation *and against said Chapman* for sixty-
one thousand five hundred and fifty-four dollars and
thirteen cents; that thereafter certain payments were
made on said note and judgment; and that there re-
mains due and unpaid on said note *and judgment* the
sum of thirty-four thousand five hundred and fifty-one
dollars and twenty cents. It is further averred that
said corporation has no other property, and that its
capital stock is valueless; and upon *these* averments
plaintiff bases his right to recover the amount of the
Sayre note.

From the foregoing averments it seems quite clear to
us that Sayre was a surety for Chapman—for Chapman
as well as for the mining company. It appears that on
April 19, 1884, there was made and delivered to appel-
lant a promissory note for one hundred and ten thou-
sand dollars, signed at the bottom by the Pioneer
company, and indorsed by Chapman, and that "to secure
the payment of the same" Sayre, deceased, made the
"Sayre note" for ten thousand dollars. It was to se-
cure the one hundred and ten thousand dollars *just as
it stood*—with the names of the responsible parties

thereto, the maker and indorser written therein and thereon—that Sayre made *his* note. ·The only liability which he assumed to appellant was that if the persons who signed said one hundred and ten thousand dollar note, the one in form as maker, and the other as indorser, with demand and notice waived, should fail to pay the same, he (Sayre) would be liable for the same to the extent of his ten thousand dollar note. He based his contingent liability upon the probable financial ability of both the mining company and Chapman; as to him they were both principals, and he was exonerated, if by any act of appellant the latter's rights or remedies against either the mining company or Chapman were impaired, suspended, or destroyed. And this conclusion is made still more apparent by the fact that the one hundred and ten thousand dollar note was merged in a deficiency judgment against both the mining company and Chapman.

Sayre, then, being a surety, he was exonerated: 1. If appellant Montgomery released Chapman from all liability under said judgment, and thus released the surety; or 2. If Montgomery, having a judgment lien upon land of Chapman which, if sold at its real value, would have realized a sufficient amount of money to satisfy all indebtedness of the latter to the former, including said judgment, united with Chapman in selling and conveying said land at private sale to one Hughes for a price far less than its real value.

The jury returned a general verdict for defendant, no special issues having been submitted to them; and it is quite clear that they were warranted by the evidence in finding the first of the said two propositions in favor of respondent—that is, that Montgomery released Chapman. And there is no specification of the insufficiency of the evidence to support such a finding, or of any erroneous ruling of the court as to the admissibility of evidence on that point. Respondent contends that the general verdict imports a finding in his favor of all the material issues, and therefore a finding that appel-

lant released Chapman; and that this being so it is immaterial whether or not the court committed any errors with respect to the second question as to the value of the land sold to Hughes.‾ Appellant contends, however, that it cannot be known upon what ground the jury based their verdict, and therefore if the court committed errors about the question of the value of the land, the judgment should be reversed. We will assume for the purpose of this decision, that appellant's view of the matter is correct, because we do not think that the court committed any reversible error in its rulings concerning the value of the land.

With respect to the question of the value of the land, appellant took a number of exceptions to the rulings of the court in passing upon offered evidence and instructing the jury on that subject. The various exceptions, however, present mainly one point, which may be stated as follows: appellant contended that the only question proper to be asked witnesses on the subject of value was, what would the land have brought if respondent had taken out an execution and had it sold by the sheriff at public auction for full *cash value?* while the court admitted evidence that in the region of the land in question large tracts of land had never been sold for all cash, but for from one-fourth to one-third cash, and the balance on reasonable time and at a reasonable rate of interest secured by mortgage on the land sold, and allowed witnesses to be asked the general question: "What was the fair market value of the land at the time of the sale to Hughes?" In thus ruling the court, in our opinion, did not commit error. The appellant declined to pursue his lien against the land, and sold it at private sale; and having done so the question before the jury was the difference between the amount for which it was sold and its fair market value at the time of sale. And in arriving at the real value of the land the jury were not confined in this case, any more than they would have been in any other case, to what it would have brought at a forced sale for cash. They had

the right to consider the character and situation of the property, and the usual methods by which sales of such property were affected, where there were parties wanting to sell and parties wanting to buy. Indeed, it would have been practically impossible to have determined the market value of such land upon the supposition of full cash payment, for there had been no such sales. It was proper, therefore, for the jury to have such information as the said ruling of the court allowed them. The testimony admitted tended to show the fair market value of the land, and furnished proper aid to the jury in determining such value. The case of *Cassin* v. *Marshall*, 18 Cal. 689, cited by appellant, dealt with facts very different from those in the case at bar. It is to be remarked also that the sale from appellant to Hughes was for a very small amount in cash, and the balance on time secured by mortgage.

It is also contended that the court erred in allowing some testimony of the amounts for which Hughes sold some small parts of the land "a few months" after the sale to him. This, considering the other evidence in the case, would be a matter of too small importance to work a reversal of the judgment, even if it be conceded that the ruling was erroneous. But we do not think that the ruling was erroneous. While the thing to be determined is the value on the day in question, still, evidence is not necessarily confined to that very day. Evidence of value for short periods before and after the day in question has been frequently allowed. Its allowance is greatly within the discretion of the court, and, under the circumstances of this case, we do not think that such discretion was abused.

The judgment and order appealed from are affirmed.

DE HAVEN, J., FITZGERALD, J., GAROUTTE, J. and HARRISON, J., concurred.

Rehearing denied.