## NORRIS et al. v. CRANDALL et al.

### L. A. No. 895; June 26, 1901.

#### 65 Pac. 568.

**Exchange of Property—Fraud.—Where, in an Action to Rescind** an exchange, the court found that defendant represented his property as worth $4,000, and believed it worth that, while it was worth only $2,000, the exchange should not be rescinded when the representation was made and relied on as an opinion, and not as a statement of fact.[1]

**Exchange of Property—Fraud.—Where Plaintiff Sought to Rescind** an exchange of property on the ground of fraud, and the court finds there was no fraud, a failure to find as to all the facts alleged in the complaint is not error.

**Exchange of Property.—Where, in an Action to Rescind an Exchange of Property,** the parties treated the value of the properties exchanged as material, and evidence thereof is admitted over plaintiff's objection, the judgment should not be reversed, since, if immaterial, it could not prejudice plaintiff.

**Witness.—Where, on Cross-examination, a Witness was Asked** numerous questions as to whether he had not made certain statements to another, but no time, place or circumstances were specified, it was not error to refuse to permit such others to testify as to such statements for the purpose of impeaching such witness.

**Evidence of Value.—Where a Lawyer Engaged for Twenty Years** as an examiner of titles and as attorney for leading loaning companies in a city testifies that he is acquainted with the value of certain lots therein, he should be permitted to testify as to such value.

APPEAL from Superior Court, San Diego County; J. W. Hughes, Judge.

Action by Adolphus G. Norris and another against Isadore A. Crandall and others. From a judgment for defendants and from an order denying a new trial plaintiffs appeal. Affirmed.

L. E. Dadmum and H. A. Jerauld for appellants; Parrish & Mossholder for respondents.

---

[1] Cited and approved in Crandall v. Parks, 152 Cal. 776, 93 Pac. 1019, and reconciled with the rule as stated in 2 Pomeroy's Equity Jurisprudence, section 878, to the effect that when a party affirms as to what he should speak merely by way of opinion, his affirmation may be regarded as a fraudulent misrepresentation.

CHIPMAN, C.—Plaintiffs were the owners of certain land situated in San Diego county, and defendants, or some of them, were owners of certain improved lots in the city of Lincoln, Nebraska. An exchange, after much negotiation, was finally agreed upon between the parties, and deeds made September 10, 1897. Defendants had formerly resided in Lincoln, but had removed to San Diego in 1895. Plaintiffs resided in San Diego county, and had, up to 1897, never been in Lincoln. Upon the exchange of deeds, plaintiffs and defendants went into the possession of their several lots and tracts of land, plaintiffs removing to Lincoln, where they arrived and went into possession October 5, 1897. The complaint alleged that the San Diego land and improvements were of the value of $3,600, and the personal property included in the trade (being farm implements and other ranch belongings) was of the value of $600, making in all $4,200; that defendants, through defendant G. H. Crandall, acting in their behalf, represented their Lincoln property to be worth $6,000, and that it was encumbered to the extent of $1,100, and no more; "that said property was worth and of the market value of four thousand dollars, at least, over and above said mortgages." Certain alleged false representations as to the improvements on the lots are set forth, and that the property was bringing nine dollars per month rent, and "that said real property was level, and in fine shape, and in a fine and first-class condition." It is alleged that plaintiffs had no personal knowledge of the property, and relied wholly on the representations of defendants, which, it is alleged, were entirely false, and fraudulently made to deceive and cheat plaintiffs, and on this ground the rescission is sought. Among other of the alleged false representations, it is alleged that, instead of a mortgage debt of $1,100 being on the property, it was encumbered in the further sum of $1,000.

The court made the following findings of fact: (1) That the San Diego property was of the same value, at the time of the exchange, as the Lincoln property, in excess of all mortgages thereon, to wit, of the value of $2,000. (2) That while the negotiations for the trade were progressing defendants gave to plaintiffs the name of a party then residing in San Diego, and pointed out his residence, to wit, J. F. Kinney, Esq., who, defendants informed plaintiffs, once owned a portion of the Lincoln property in question, and

could give plaintiffs any information they might desire regarding said Lincoln properties. (3) That defendant G. H. Crandall represented the Lincoln properties to be of the value of $4,000, and that he believed said properties to be worth that amount; that plaintiff A. G. Norris represented and that he believed his San Diego property to be worth $3,500, "but that neither plaintiffs' said property nor defendants' said property was worth but $2,000 over and above all mortgages and encumbrances, of which latter there were none on the Lincoln property except in the amount of $1,100." The finding 3 then states certain specific representations made by defendant G. H. Crandall, and that they were true, and that he did not represent the property "to be in fine shape, level, and in fine and first-class condition," and it is found that the representations made by said Crandall "were not made to deceive or to defraud plaintiffs, or either of them; that plaintiffs believed and relied upon the foregoing statements of said G. H. Crandall." (4) That plaintiffs went upon and took possession of the Lincoln property October 5, 1897, "and took no steps and made no offer to rescind their contract of exchange of said properties," and gave no notice of any dissatisfaction with the trade until July, 1898. (5) That plaintiffs knew, when the exchange was made, that defendants had not seen the Lincoln property since October, 1895. (6) That the allegations of fraud in plaintiffs' complaint alleged against defendant G. H. Crandall are not sustained by the evidence. (7) That plaintiffs were not induced to exchange their property "by the fraudulent representations or statements of said defendants, or any of them."

1. It is contended that findings 1, 3 and 4 are not supported by the evidence, and that on findings 1 and 3 the judgment should have been for plaintiffs, because the court found that defendants represented their Nebraska property to be worth $4,000, and that plaintiffs believed and relied upon these representations, whereas the court found the property to be worth only $2,000 over and above the mortgage of $1,100, thus making the value of $3,100 instead of $4,000. There would be force in the latter of the above contentions if the evidence compelled the conclusion that the exchange of properties was brought about by a false statement of value by defendants made as a substantive fact on which plaintiffs relied as a fact, and not as defendants' opinion as to the fact.

We do not, however, think that the evidence would justify any such conclusion. The evidence was that negotiations for the exchange were entered upon in the early part of August, 1897, and continued at intervals until in September, when the deeds passed. Defendant G. H. Crandall testified fully as to the representations made by him (and he is the only defendant charged with having made any). After stating what he told plaintiff Adolphus Norris as to the improvements, the situation of the lots, and also as to the condition of the improvements in 1895, when the defendants last saw the property, the amount of encumbrances on the property, and like matters, as to which the court found with defendants, the witness continued: "I told him in good times the whole property there—the three lots and four houses—ought to be worth $4,000; but I told him it was like property here,—it was at a standstill; property was not moving much; and that, if he had to sell, I did not think that he could get more than half that amount; I said: 'It is just like it is with your property here. You place your property at $3,000, and you know the way property is selling here that you could not get half that for it.' We had several conversations, and they were all materially just about the same. I told him, if he wished to know more about the place, he had better write; that he could find any quantity of real estate men there that could tell him all about the property. 'If you don't want to go to that trouble, there is a man in the city of the name of Judge Kinney, that platted that addition, who could tell you all about it.' I told him that the property when we left, in 1895, was in good condition, but how it was at the time we made the trade I did not know. . . . . I told him there was a draw running through the place, or dry creek, called 'Antelope Creek,' and that this two-story house was built into the bank of the creek or draw, and that the chicken-house was built into the same bank; and all those representations were true." It appeared that the property was situated in about the center of the city, taken as a whole; that there were fine residences erected near by; that the location was favorably located with reference to street-cars and to the business portion of the city, to schoolhouses, churches and like conveniences. Some of the conversations between plaintiff Adolphus Norris and defendant G. H. Crandall

were in the presence and hearing of the latter's father and sister in the store of G. H. Crandall. They were called as witnesses, and corroborated the statements made to Adolphus Norris by G. H. Crandall, as testified to by the latter. The evidence shows that what was stated as to the value of the Lincoln property was but the opinion of Crandall; and other testimony of other witnesses placed the value at quite as high a figure as Crandall thought the property worth. There was testimony introduced by plaintiffs to the effect that the Nebraska property was not worth the mortgage debt, and defendants' witnesses varied much in their estimate of its value. The same may be said of the value placed by witnesses on the San Diego property, some of whom testified to a value as low as $250. It is evident that the court concluded from the testimony that Crandall did not make his statements with any intention to mislead Norris, or to gain a fraudulent advantage in the transaction, and that Norris did not make the exchange in reliance on Crandall's statement of the value of the Lincoln property as a substantive fact, but merely as his opinion. In this conclusion of the court support is found in the evidence.

2. There were certain facts alleged in the complaint, paragraphs 6 to 13, inclusive, in failing to find on which it is claimed the court erred. The court did find upon such of these paragraphs as alleged the representations made by Crandall, as to their influence on plaintiffs, as to whether they were fraudulently made, and as to the mortgage indebtedness on the Lincoln property. It is true, the evidence shows that there were mortgages for $1,000 in excess of the $1,000 represented by Crandall to be the only liens on the property. But it also appeared that the $1,000 mortgages had in fact been paid, but were not satisfied on the record, although Crandall supposed they had been. They were, however, subsequently satisfied. The other allegations were found upon either specifically, or were covered fully by the finding against the alleged fraudulent intent, or they were allegations of merely probative facts, not necessary to be found upon. The findings support the judgment. The principal ultimate fact in the case on which plaintiffs relied was whether Crandall falsely and fraudulently, and with intent to deceive plaintiffs, made the representation alleged. The finding being against plaintiffs on this fact, no finding in

their favor on the omitted facts would justify a different judgment: Windhaus v. Bootz, 92 Cal. 617, 28 Pac. 557.

3. Certain witnesses were allowed, against plaintiffs' objection, to testify to the value of plaintiffs' property, and this is claimed as error, as it appeared that defendants saw the land before they purchased. Plaintiffs alleged that the value of their property at the time of the trade was $3,600 for the land. Defendants denied that the land was of greater value than $1,000. The court found that the value of the real property was $2,000. The parties seem to have treated this as an issue in the case, although, in view of the other issues, we cannot see that it was particularly material. However, the testimony, if immaterial, could have worked no prejudice to plaintiffs.

4. Error is claimed in refusing to allow the witness W. B. Norris to testify to certain conversations with the witness G. H. Crandall, who, when testifying, denied the conversations. The objection was that no sufficient foundation was laid for the impeachment of the witness Crandall; that the place where, the time when, and the persons present were not given in the questions asked on cross-examination. The record reads as follows: "Plaintiffs recalled W. B. Norris [not plaintiff] in rebuttal, and offered to show that G. H. Crandall, in the months of September and October, 1897, at his store in San Diego, California, stated to W. B. Norris during the conversations that there was a fine two-story house on lots 7 and 8, and that the draw in the lots did not amount to anything; that one could take a plow, and run a furrow alongside of the road in front of the lots, which would keep all the water from running through the lots, and would fill up the draw; that the property was worth $5,500; and that the lots were not cut up or washed out any, but were good lots, and laid well.'' When the witness Crandall, whom it was proposed to impeach, was testifying, he was asked a great many questions as to whether he had not made certain and different statements at different times to the witness Norris, some of which were sufficiently definite as to time and circumstances, while others were not thus definite. In none of them was the store of the witness Crandall named as the place, and in none of them was any person named as present, nor did it appear that the two persons

only were present. It will be observed that plaintiffs did not formulate any question for the impeaching witness to answer, but stated generally what they proposed to show; and the offer embraced several different statements of conversations claimed to have occurred in two different months, giving no time in the months, and naming no persons' as present, but fixing the place as Crandall's store, a place at no time mentioned to Crandall when on the witness-stand. The proper method of impeachment is to formulate the question so as to embrace the very statement, at least in substance, which the witness whom it is desired to impeach has denied making, and to ask the impeaching witness for a categorical answer whether the statement was made, giving "the circumstances of times, places, and persons present": Code Civ. Proc., sec. 2052. Both parties cite Plass v. Plass, 122 Cal. 4, 54 Pac. 372. In that case it appeared that no persons were present at the time and place mentioned except the interlocutors. It was held that, where it appeared that no persons were present except the impeaching witness and the witness sought to be impeached, it was not necessary to state in the impeaching question, "No other persons being present." It was also held that, where it appears that only the two were present, it would be superfluous to require a statement that the person spoken to was present, as it must be presumed he was present, or he could not have been spoken to. The case here is not brought within the facts of the Plass case. We think the court made a correct ruling.

5. It is claimed that the court erred in permitting the witness Brown to testify in defendants' behalf as an expert on the value of real estate, and in refusing to strike out his testimony. It is claimed that mere opportunity offered for observation will not constitute one an expert, or render his opinion admissible; that he must have been educated in the business about which he testifies, or has acquired actual skill and scientific knowledge upon the subject; citing Code Civ. Proc., subd. 9, sec. 1870; Goldstein v. Black, 50 Cal. 463; Reed v. Drais, 67 Cal. 491, 8 Pac. 20, and other cases. In the present case Brown testified that he was a lawyer, and had been engaged for twenty years as examiner of titles of real estate in Lincoln; that he was acquainted with the value of real estate in that city in the years 1895 and 1897,

and was acquainted with the value of the lots in question, and of the real property in that vicinity; that he had acted for twenty years for some one or other of the leading loaning companies doing business in Lincoln, the managers of which kept themselves well informed as to not only the market value, but as to the income value, of improved properties. The witness possessed something more than mere opportunity for observation. His profession, and his particular specialty in that profession, and his employment by those who were loaning money based upon values of real property, gave him the required knowledge, and he testified that he had knowledge of the values of the property in controversy. The witness brought himself within the rule and the reason of the rule as laid down in Reed v. Drais, supra, and the authorities there cited, and the question there was as to the value of real property.

We discover no error in the record, and therefore advise that the judgment and order be affirmed.

We concur: Gray, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.