[L. A. No. 4379. In Bank.—March 30, 1920.]

## A. HERDAN, Respondent, v. E. O. HANSON, Appellant.

**[1]** ELECTION OF REMEDIES—ESTOPPEL.—A party having two inconsistent, concurrent remedies may not pursue both, but must choose between them and, after having elected to proceed upon one, is thereby bound and estopped from invoking the other.

---

1. Binding force of election to pursue one of two inconsistent, concurrent remedies, note, 10 Am. St. Rep. 487.

[2] ID.—MISTAKE IN ELECTION—EFFECT OF.—Where a party makes a mistake in election of remedies, he is not estopped by his abortive election from subsequently resorting to and pursuing a remedy to which he was really entitled.

[3] ID.—FOUNDATION OF THEORY OF ELECTION.—The principle of election is founded upon the theory that a party should not be allowed to occupy inconsistent positions.

[4] ID.—ACTION FOR RESCISSION OF CONTRACT—FRAUD—JUDGMENT OF NONSUIT—SUBSEQUENT ACTION FOR DAMAGES—RIGHT OF PLAINTIFF.—The bringing of an action for the rescission of a contract for the exchange of properties on the ground of fraudulent representations in which a judgment of nonsuit was rendered because of the failure of the plaintiff to tender defendant a deed prior to bringing the action is not a bar to a subsequent action for damages for fraudulent representations, since the effect of the judgment was merely to leave the parties in the same relative position as before the action was commenced, namely, with a subsisting contract between them.

[5] ACTION FOR FRAUD—EXCHANGE OF PROPERTIES—EVIDENCE—VALUE. In an action for damages for fraudulent representations made by defendant as to the value of certain real property exchanged for a stock of merchandise belonging to the plaintiff, evidence of the value of the properties was admissible not only under the issue of fraud for the purpose of showing the circumstances surrounding and attending the making of the contract, but was relevant and material to the issue raised by the answer as to the true value of plaintiff's stock of merchandise.

[6] ID.—VALUE OF PROPERTIES AT OTHER TIMES—DISCRETION.—In such an action, the admission of evidence of value at times shortly prior or subsequent to the date of the contract of exchange is largely within the discretion of the trial court.

[7] PRINCIPAL AND AGENT—INTEREST ADVERSE TO PRINCIPAL—IMPUTED KNOWLEDGE.—Where an agent is interested in the result of a transaction adversely to the interest of his principal, the rule of imputed knowledge on the part of the principal no longer obtains.

[8] ID.—ACCEPTANCES OF BENEFITS OF REPRESENTATIONS OF AGENT—LIABILITY OF PRINCIPAL.—A principal who accepts the advantages obtained by the representations and concealments of his agent is bound thereby.

[9] FRAUD—EXPRESSION OF OPINION—WHEN AFFIRMATION OF FACT.—When a statement concerning a subject matter of a transaction, which might otherwise be only an expression of opinion, is affirmed

---

2. Effect of choosing by mistake, remedy not legally available, notes, 5 Ann. Cas. 962; 8 L. R. A. (N. S.) 144; 22 L. R. A. (N. S.) 1153.

as an existing fact material to the transaction and reasonably induces the other party to consider and rely upon it as a fact, the statement then becomes an affirmation of fact within the meaning of the general rule as to fraudulent representations.

[10] ID.—EVIDENCE OF FRAUD.—While fraud must be clearly proved, direct evidence is not necessary, but the indirect evidence and the inference to be drawn from the proved facts must be so convincing as to satisfy the court that fraud was designed and accomplished.

[11] ID.—REPRESENTATIONS OF EXISTING FACT—SUFFICIENCY OF EVIDENCE.—In this action for damages for fraudulent representations, it cannot be said that the evidence was insufficient to support the finding that the representations were of an existing fact.

[12] ID.—EVIDENCE—STATEMENTS OF DEFENDANT—REFUSAL TO STRIKE OUT HARMLESS ERROR.—In such action, refusal to strike out evidence of statements made by defendant to plaintiff's daughter when the contract was being drafted on the ground of absence of proof that plaintiff heard them was harmless where there was a substantial conflict in the evidence as to whether they were heard by the plaintiff.

[13] ID.—DISMISSAL OF ACTION—PROPER REFUSAL.—There was no error in refusing to dismiss such action on the ground that defendant attempted to rescind prior to suit, where it was shown that he had sold the stock of merchandise and was not able to restore plaintiff to his original position.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. M. Barstow for Appellant.

G. C. De Garmo for Respondent.

LENNON, J.—Action for damages for fraudulent representations whereby defendant procured an exchange of property between himself and plaintiff. Defendant appeals from a judgment in favor of plaintiff.

On May 22, 1913, plaintiff and defendant entered into an agreement whereby plaintiff was to transfer to defendant a stock of merchandise in exchange for two parcels of real property belonging to defendant, one of which was in the city of Los Angeles and subject to a mortgage of three thousand dollars, and the other situated in Flathead County, Montana, and subject to a mortgage of one thou-

sand four hundred dollars. The transfers thus agreed upon were consummated the following June. Plaintiff alleges that in August, 1913, he first discovered the true value of the Montana property, which he claims had been misrepresented to him by the defendant. On September 10, 1913, plaintiff commenced an action against said defendant, in the superior court of Los Angeles County, wherein plaintiff sought to have the above-described contract rescinded. The trial court in that case granted defendant's motion for a judgment of nonsuit on the ground that plaintiff had failed to tender defendant a deed to said Montana property prior to bringing the action for rescission. The judgment, which was entered accordingly, has become final. Plaintiff then instituted the present action for damages resulting from the alleged fraudulent representations. In this action the trial court found, among other things, that the merchandise transferred by plaintiff was of the reasonable value of ten thousand dollars; that defendant fraudulently, and with intent to deceive plaintiff, represented to said plaintiff that the Montana property was of the fair and reasonable value of six thousand dollars and also represented to the plaintiff that the property in Los Angeles was of the reasonable value of eight thousand dollars, and that the equities in both parcels of real property were reasonably worth nine thousand five hundred dollars; that the true value of said property in Los Angeles was eight thousand dollars, "but said Montana property was not on said twenty-second day of May, 1913, or at any other time, of any greater value than the sum of two hundred dollars"; that there was a mortgage on the Los Angeles property amounting to three thousand dollars and on the Montana property amounting to one thousand four hundred dollars; and that the equities in both said parcels of real property were not at the time of making said contract, or at any other time, worth over five thousand dollars. Judgment was rendered in favor of plaintiff for the sum of four thousand six hundred dollars.

The main contention in support of the appeal is that the plaintiff, having elected to proceed in an action for rescission, is now precluded from resorting to an action for damages. [1] It is insisted, upon behalf of appellant, that a party having two inconsistent, concurrent remedies may not

pursue both, but must choose between them and, having clearly elected to proceed upon one, is thereby bound and will be estopped from invoking the other. (*Hines* v. *Ward,* 121 Cal. 115, [53 Pac. 427].) [2] It is, however, equally true that, where a party makes a mistake in election of remedies, he is not estopped by his abortive election from subsequently resorting to and pursuing a remedy to which he was really entitled. (*Agar* v. *Winslow,* 123 Cal. 587, [69 Am. St. Rep. 84, 56 Pac. 422].) It is insisted, however, upon behalf of appellant, that plaintiff's cause of action should be barred in the present case by his prior election of remedies, for the reason that the action for rescission failed not because plaintiff attempted to select a remedy to which he was not entitled, but because of his own neglect in omitting to comply with the conditions prerequisite to the granting of the relief prayed for by him. [3] The answer to this contention is that the principle of election is founded upon the theory that a party should not be allowed to occupy inconsistent positions (Bigelow on Estoppel, 6th ed., p. 732), whereas, the effect of the judgment of nonsuit in the prior action was merely to leave the plaintiff and defendant in the same relative position as before the action was commenced, namely, with a subsisting contract through which plaintiff claims to have been defrauded. (*McGibbon* v. *Schmidt,* 172 Cal. 70, [155 Pac. 460].) The instant case is indistinguishable from the case cited. In that case the plaintiff, who had entered into an agreement. for the purchase of certain real property, claimed a breach of the contract and instituted an action for recovery of the money paid on the purchase price in which a judgment of nonsuit was entered. Plaintiff thereafter prosecuted an action of specific performance of the contract, and it was held that she was not estopped, by reason of bringing the former action for money had and received, from insisting, in the subsequent action, upon specific performance. The ground upon which the nonsuit was granted in the first action does not appear, but the reasoning of the case is not thereby rendered inapplicable to the case at bar. The court there said, 172 Cal., page 75, [155 Pac. 463]: "It [the action to recover the purchase money] could not have been successfully maintained except by proof that the contract had been rescinded, or that defendant had been guilty of a breach

thereof. The judgment of nonsuit was, therefore, based upon the fact that no rescission, termination, or breach of the contract had been proven and that it was still in force; that plaintiff had no such remedy as she sought to enforce by that action. . . . The defendant is placed in no worse position by reason of the unsuccessful prosecution of that action. There is, consequently, no estoppel.'' [4] It follows that, inasmuch as the attempted prior election of the plaintiff was arrested and rendered abortive before he had proceeded to a point absolutely incompatible with the institution and maintenance of the present action, the principle of estoppel arising from an election of inconsistent remedies cannot be invoked and applied.

[5] Error is claimed in the admission, over defendant's objection, of testimony as to the value of plaintiff's stock of goods. The objection was made upon the theory that, while the value of the property transferred to plaintiff was material for the reason that his cause of action depended upon the existence of misrepresentations as to the true value of said property, still the value of the property transferred by plaintiff could not be considered, for the reason that the contract related to the exchange of property only and did not purport to establish or refer to a pecuniary standard of value as to the basis of the deal. Not only was evidence of the value of the properties exchanged admissible under the issue of fraud 'for the purpose of showing the circumstances surrounding and attending the making of the contract (*Beverly* v. *Blackwood,* 102 Cal. 83, 92, [36 Pac. 378]; Code Civ. Proc., secs. 1856; 1860), but it was relevant and material to the issue raised by the defendant's answer as to the true value of plaintiff's stock of merchandise. (*Norris* v. *Crandall,* 6 Cal. Unrep. 706, [65 Pac. 568].)

The testimony of the witness Sugarman as to the value of the merchandise was not necessarily incompetent even though it referred to such value at a time some months prior to the date of the execution of the contract in suit. [6] While such value on the date in question was the precise thing to be determined, nevertheless the admission of evidence of such value at times shortly prior or subsequent to the date in question was largely within the discretion of the trial court, and we are not prepared to say that, under the circumstances, the discretion was abused. (*Montgomery* v.

*Sayre,* 100 Cal. 182, 187, [38 Am. St. Rep. 271, 34 Pac. 646].)

Several assignments of error and specifications of insufficiency of evidence to support the findings of fact are made and based upon the claim that plaintiff failed to prove any fraudulent representations by defendant by which plaintiff was induced to enter into the agreement. The testimony upon this phase of the case is, in substance, as follows: Plaintiff, being desirous of disposing of his stock of merchandise, placed it in the hands of Morris Reiss, his wife's nephew, for sale at the price of ten thousand dollars. Reiss was in the real estate business for himself, but having his office with the defendant, and an understanding with the defendant that all commissions earned by him were to be shared equally with defendant. Reiss and defendant discussed the possibility of trading defendant's Los Angeles and Montana land for plaintiff's stock and agreed, in effect, that, if the exchange could be brought about, Reiss was to receive from the defendant the sum of two hundred dollars as commission for his services. At that time defendant told Reiss that he had never seen the Montana land; that he had bought it about two years before from a man named Fisher for two thousand two hundred dollars, paying eight hundred dollars in cash and giving a mortgage for the balance of the purchase price; that Fisher told him the land was worth $150 an acre, and was good land for subdividing, in which case $250 an acre might be realized; that some Norwegian friends of the defendant, who were familiar with the land, said it was good apple land because of the elevation and soil. Defendant further stated: "I'll stake my life on it that Fisher tells me the truth," and referred Reiss to Fisher, who was at that time living in Southern California. Reiss reported to plaintiff, in substance and effect, what defendant had told him about the land, but did not inform plaintiff that defendant had never seen the Montana land. Plaintiff objected to taking land which he himself had never seen and, upon Reiss so reporting, the defendant then said to Reiss that, if plaintiff took the land, he would later trade it off for plaintiff for "local holdings." This was reported by Reiss to plaintiff. The night before the contract was signed, Reiss' wife received a letter from Montana, in response to inquiries made by her con-

cerning the value of the Montana land. This letter stated
that the forty acres of land in question were valueless by
themselves, for the reason that they consisted entirely of a
very high hill, which was too steep for farming and not
good for pasture because of a large ledge of rock running
through it; the letter further stated that if the owner pur-
chased the balance of the quarter-section, the land in ques-
tion would be worth something. Reiss and his wife took
this letter to the defendant, who informed himself of its
contents. Defendant thereupon stated that the writer must
have had the wrong description "or else someone was knock-
ing," and again said to Reiss that the land was worth $150
an acre and that he would positively guarantee that every-
thing was just as he had said. Reiss and his wife both testi-
fied that defendant requested them not to show the letter
to plaintiff as it would spoil the deal. There is testimony
that defendant stated to Reiss that he had refused an offer
of one hundred dollars an acre for the land. The letter in
question was not called to the attention of plaintiff, and
the following morning the contract was signed. While
Reiss was drawing up the contract, the defendant stated to
plaintiff's daughter, in the presence of plaintiff, "Your
father is making a good trade. That Montana land is
worth $150 an acre and will soon be worth $250 an acre. It
is fine apple land. If you were to take the mortgage of three
thousand dollars off the University property and put it on
the Montana land and take the mortgage of one thousand
four hundred dollars off the Montana land and put it on the
University property, I would take the Montana land every
time."

In contending that the evidence as thus outlined does not
support the findings complained of, it is argued that Reiss
was the agent of the plaintiff, and that, therefore, the
knowledge of Reiss, obtained from the defendant, was
that of the plaintiff. Ordinarily, the knowledge of an
agent is imputed to his principal. (Civ. Code, sec. 2332.)
[7] But, assuming that Reiss was the agent of the plain-
tiff, it is the rule that, where an agent is interested in the
result of a transaction adversely to the interest of his prin-
cipal, the rule of imputed knowledge on the part of the
principal no longer obtains. (31 Cyc. 1595.) In the pres-
ent case, there was sufficient evidence to support the find-

ing of the trial court that Reiss was acting as agent for defendant in securing the exchange in question. Since he was acting for defendant, upon a commission basis, his interest was adverse to plaintiff, and plaintiff cannot be charged with his uncommunicated knowledge of the actual conditions. [8] On the other hand, having accepted the advantages obtained thereby, defendant was bound by the representations and concealments of Reiss, his agent. (*Bonnarjee* v. *Pike* (Cal. App.), 185 Pac. 479; Civ. Code, sec. 2330.)

[9] With reference to the contention that the evidence does not support the findings in question because the alleged and found fraudulent misrepresentations were but mere expressions of opinion, it will suffice to say that, when a statement concerning a subject matter of a transaction, which might otherwise be only an expression of opinion, is affirmed as an existing fact material to the transaction and reasonably induces the other party to consider and rely upon it as a fact, the statement then becomes an affirmation of fact within the meaning of the general rule as to fraudulent representations. (2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 878.) This rule is frequently, and properly, applied to statements concerning the value of land at a distance when the party to whom the statements are made possesses no other information and is not in a position to investigate. (*Crandall* v. *Parks,* 152 Cal. 772, [93 Pac. 1018]; *Nichols* v. *Moore,* 181 Cal. 131, [183 Pac. 531]; 2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 878, note h.) Whether the statements as to value in this case were affirmed in such a manner as to permit reliance upon them by plaintiff as statements of actual facts within the knowledge of defendant, and whether the suppression of the information contained in the letter received from Montana amounted to fraud, were questions of fact for the determination of the trial court. (*Fulton* v. *Fisher,* 151 Iowa, 429, [131 N. W. 662].) [10] While fraud must be clearly proved, direct evidence is not necessary for this purpose, but the "indirect evidence and the inference to be drawn from the proved facts must be so convincing as to satisfy trial court and trial jury that fraud was designed and accomplished." (*Ryder* v. *Bamberger,* 172 Cal. 791, 800, [158 Pac. 753, 757].) [11] We are not prepared to say

that the evidence in this case was insufficient to have satisfied the trial court that the alleged and found fraudulent representations were made by defendant and that they were tantamount to an affirmation of an existing fact, rather than a mere expression of opinion, and were the inducing cause of the plaintiff's entering into the contract.

It is claimed that defendant's statements made, while the contract was being drafted, to plaintiff's daughter were inadmissible because it was not shown that plaintiff heard them and that, in any event, it cannot be fairly said that they formed any part of the inducements to the making of the contract, since the terms of the contract had been previously agreed upon and were actually being reduced to writing at the time the statements were made. No objection was made to the questions which upon direct examination elicited the testimony concerning the statements complained of, but, upon cross-examination, the witness, plaintiff's daughter, declared that nobody else but she and a Mrs. Orlejan heard the statements. Thereupon counsel for appellant moved to strike out the daughter's testimony concerning the statements of the defendant made at the time the contract was being drafted, upon the ground that they were immaterial and irrelevant. The ruling of the trial court denying the motion is assigned as error. Of course, if the plaintiff did not hear the statements complained of, they were not material and relevant as a part of the misrepresentations which, it was claimed, induced the plaintiff to enter into the agreement in controversy. Strictly speaking, the motion to strike out should have been preceded by a previously stated and sufficient objection made at the time of the introduction in evidence of the statements complained of, but, assuming, as may perhaps be properly done, that the nature of the testimony of the witness upon direct examination was not such as to put counsel for appellant upon notice of its irrelevancy and immateriality, and that, therefore, he was not required to interpose an objection upon those grounds before he could avail himself of a motion to strike out, still the record shows that, in addition to his daughter's testimony, the plaintiff testified concerning the making of the statements, in effect and without objection, that they were made in his presence, and the fair import of his testimony in this

particular, as shown by the record, is that he heard the statements. [12] It is apparent, therefore, that there was a substantial conflict in the evidence as to whether or not the plaintiff heard the statements in question, and this being so the error, if any, in the ruling of the trial court refusing to strike out the testimony of the daughter in the particulars stated was harmless. Even though the statements in question were made after the terms of the agreement had been arrived at, we think it cannot be fairly said that they formed no part of the cause which ultimately induced the plaintiff to finally execute the contract. This being so, the statements in question had a material and relevant bearing, to some extent at least, upon the issue of whether or not the plaintiff's participation in the agreement was procured as the result of fraudulent misrepresentations.

[13] There is no merit in the contention that the action should have been dismissed because of defendant's attempted rescission of the contract prior to the commencement of the present action. Defendant had sold the stock of merchandise before making the offer to rescind, and therefore the trial court did not err in concluding that, even if defendant were able to obtain the merchandise from his vendee, he was not able to restore plaintiff to his original position.

The judgment is affirmed.

Lawlor, J., Wilbur, J., Kerrigan, J., *pro tem.,* Angellotti, C. J., Shaw, J., and Olney, J., concurred.

Rehearing denied.

All the Justices concurred, except Shaw, J., and Wilbur, J., who were absent.