## SAN FRANCISCO IRON & METAL CO. v. SWEET STEEL CO.

Circuit Court of Appeals, Ninth Circuit.
January 23, 1928.

Rehearing Denied February 27, 1928.

No. 5150.

**I. Contracts ⊘16, 170(I)—Though mere unanswered offer does not constitute contract, construction which parties place on contract expressed by letters may be considered.**

While mere offer made to another does not become an agreement, merely from the fact that the person to whom it is made makes no reply, court may nevertheless consider construction which parties place on contract, where contract is expressed by correspondence.

**2. Sales ⊘53(2)—Whether order and unanswered acceptance constituted sales contract held question for jury, in view of subsequent correspondence.**

In buyer's action against seller for damages, question whether contract of sale existed between defendant, ordering steel rails by letter, and plaintiff, accepting order by correspondence, subject to certain conditions concerning shipments and delays, held for jury, notwithstanding defendant's failure to answer letter accepting order, where defendant's subsequent letters indicated contract had been entered into.

**3. Sales ⊘150(3)—Right of seller, loading rails on vessel within stipulated time, to recover for buyer's repudiation, held not affected by delay of ship before sailing.**

Where seller, under contract for shipment and sale of steel rails, loaded steel on board vessel at date of shipment called for by contract, fact that vessel did not sail for three or four weeks, and that shipment was consequently delayed, held not to constitute failure of performance on seller's part, excusing buyer from liability for damages for refusal to accept goods.

**4. Sales ⊘150(3)—Seller sufficiently complies with contract by delivering goods to carrier on day specified, irrespective of whether goods are immediately moved by carrier.**

Seller, who agrees to ship goods to buyer on or before a certain day, complies with contract by delivering goods to carrier at such date, and he need not ascertain whether carrier moved goods toward their destination on day specified.

**5. Sales ⊘153, 371—Buyer's cancellation excused seller's tender, and absence of tender did not bar recovery of damages (Civ. Code Cal. § 1440).**

Where, before date of arrival of shipment of steel rails, buyer wrote letter to seller canceling order, seller was excused from making tender in accordance with contract, and absence of tender did not affect seller's right to recover damages for buyer's repudiation under Civ. Code Cal. § 1440.

**6. Sales ⊘177—Buyer, first writing for revision of charges on drafts and subsequently canceling contract, did not break contract until time of second letter.**

Where buyer at first refused to pay drafts drawn on it for price of steel rails on account of alleged excess charges, which were adjusted by seller, and later wrote seller, asking him to consider order as canceled on account of delay in shipment, no breach of contract occurred until time of second letter, which constituted repudiation of contract.

**7. Sales ⊘383—Evidence held to sustain award of $9,500 damages for buyer's repudiation of contract to purchase 600 gross tons of light steel rails.**

Award of $9,500 damages to seller of 600 gross tons of light steel rails for buyer's repudiation of purchase contract based on difference between contract and market value and cost of carrying rails to market place, held not erroneous, as without support in evidence.

**8. Sales ⊘382—Admitting evidence of sale of part of large shipment of light rails, more than one year after arrival, held not abuse of discretion, in action for damages for buyer's breach of contract.**

In seller's action for damages for buyer's breach of contract to purchase 600 gross tons of light steel rails, action of court in admitting evidence of sale made by seller, more than one year after arrival of shipment, held not abuse of discretion, on ground that evidence was too remote in time, where it appeared order of rails was an extremely large order, which would take some time to dispose of.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Action by the Sweet Steel Company against the San Francisco Iron & Metal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The defendant in error, as plaintiff in the court below, brought an action against the plaintiff in error, as defendant, alleging in its complaint that on or about March 2, 1921, the plaintiff and the defendant entered into an agreement in writing whereby the former agreed to sell to the latter, and the latter agreed to buy from the former, 600 gross tons of steel rails, with joints, at the agreed price of $61 per gross ton of 2,240 pounds, with the insurance and freight thereon to San Francisco prepaid by the plaintiff; that the defendant agreed to pay the plaintiff for said rails and joints upon the presentation to it at San Francisco of sight drafts with shipping documents and bills of lading; that said drafts and bills of lading were duly presented to the defendant for payment on April 13, 1921, and also on dates subsequent thereto up to July 9, 1921; but the defendant on all occasions refused to pay the drafts.

It was further alleged that by agreement the rails and joints were to be shipped to

San Francisco from Philadelphia on the sailing vessel Dunsyre, which was to leave Philadelphia on or about March 15, 1921, and the title to the rails and joints was not to pass until paid for; that on or about June 14, 1921, the defendant gave plaintiff written notice that it would not purchase, accept, or pay for said rails or joints; that on or about August 2, 1922, the plaintiff sold the same in open market at San Francisco for $29,190.10, which from April 13, 1921, to August 2, 1922, was the local market value thereof; and that by reason of the defendant's refusal to purchase the plaintiff expended $6,506.50 as expense of carrying the rails to market for sale. Judgment was demanded in the sum of $15,821.14.

The answer denied certain of the allegations of the complaint, and alleged that the market value at San Francisco of the rails and joints was at all times mentioned in the complaint fully equal to the alleged contract price. The jury returned a verdict for the plaintiff for $9,500, upon which judgment was rendered.

Brownstone & Goodman, and Goldman & Altman, all of San Francisco, Cal., for plaintiff in error.

Hugh K. McKevitt, of San Francisco, Cal., for defendant in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] The defendant assigns error to the denial of its motion for an instructed verdict in its favor, and it contends that the evidence failed to show the existence of a contract between the parties, and that, if there was a contract, it contained the condition that the plaintiff ship the rails from Philadelphia on March 15, 1921, and that the failure to comply with that condition justified the defendant in canceling the order as it did on June 14, 1921. The plaintiff had local agents in San Francisco. After negotiations with those agents, the defendant wrote to the plaintiff on February 23, 1921: "We have this day purchased from you for 600 gross tons new first quality steel rails of the following specifications, * * * at $61 per gross ton of 2,240 pounds. * * * Terms: Sight draft against shipping documents attached, c. i. f. San Francisco. This is to acknowledge same. Please send me your confirmation."

On March 2, the plaintiff answered that the order of February 23 had been accepted at the precise terms and on the conditions herein set forth (repeating the specifications which had been contained in the letter of the defendant), that the acceptance of the order was subject to conditions mentioned on the back of the acceptance, and adding: "unless advice to the contrary is received promptly, this order shall be considered satisfactory in all details." The "conditions" so referred to concerned the shipment and delays therein, and the exclusion of liability if strike or accident or interruptions of transportation beyond the control of the seller should intervene to prevent the carrying out of the terms of the agreement.

It is urged by the defendant that no response was sent to that letter, that the terms and conditions therein inserted were never accepted by the defendant, and that the minds of the parties never met upon the contract which the plaintiff sued upon. To this it is said that the additional conditions inserted in the plaintiff's final letter were of but minor importance, and the plaintiff's silence, together with its subsequent conduct in treating the correspondence as constituting an existing contract, must be deemed assent thereto. It is true that a mere offer made to another, does not become an agreement merely from the fact that the person to whom it is made makes no reply, even though the offer states that silence will be taken for consent; but where, as in this case, the contract is expressed by letters, the court has the right to look to the construction which the parties place thereon. McKell v. Chesapeake & O. Ry. Co. (C. C. A.) 175 F. 321, 20 Ann. Cas. 1097; Det Forenede, etc., Aktieselkab v. Eddy (D. C.) 293 F. 82, 87; American Lumber & Mfg. Co. v. Atlantic Mill & Lumber Co. (C. C. A.) 290 F. 632.

Here it is shown that on April 15, 1921, about six weeks after the date of the plaintiff's letter, the defendant wrote to the plaintiff that it had heard from its bank that the plaintiff's drafts had arrived, and that therein the defendant had been charged up with war tax and state toll on the shipment. To that letter the plaintiff made answer on April 22, 1921, that those charges had been added through a misunderstanding, and that the bank had been instructed to reduce the aggregate of the drafts to adjust the error. That correspondence clearly indicates that on April 15, 1921, the minds of the parties had met, and that the defendant had accepted and acquiesced in all the terms of the con-

tract, with the conditions expressed by the defendant, and was asserting a right thereunder to be relieved of charges which were not justified by the agreement. Acceptance of the terms of the plaintiff's letter of March 2, 1921, is shown also by the defendant's letter to the plaintiff of June 14, 1921, which complains of the fact that, whereas, the contract required that the rails should leave Philadelphia on or about March 15, and arrive at San Francisco 35 days thereafter, they had not yet arrived; "therefore kindly consider our order on this material canceled."

[3, 4] Nor can we assent to the defendant's contention that, if there was a contract, there was failure of performance, in that the vessel did not sail from Philadelphia until three or four weeks after March 15, 1921. It is admitted that the steel was loaded on board the Dunsyre on or before March 15, and this, we think, establishes shipment within the time required by the contract. "A seller who agrees to ship the goods sold to the buyer on or before a certain day complies with his contract when he delivers the goods on such date to a carrier for transportation on a regular line of transportation between the point of shipment and destination. He is under no obligation to ascertain that the carrier moves the goods toward their destination on the day specified." 23 R. C. L. 1372; Pedro Mora y Ledon v. Havemeyer, 121 N. Y. 179, 24 N. E. 297, 8 L. R. A. 245; Busk v. Spence, 4 Camp. 329; Clark v. Lindsay, 19 Mont. 1, 47 P. 102, 61 Am. St. Rep. 479; Bowers v. J. B. Worth Co., 129 N. C. 36, 39, 39 S. E. 635; Andersen, Meyer & Co. v. Northwest Trading Co., 115 Wash. 39, 196 P. 630; Schwann v. Clark, 9 Misc. Rep. 117, 29 N. Y. S. 289.

[5] The defendant contends that there is absence both of allegation and proof of performance or tender of the rails on the plaintiff's part. But we find that the complaint alleges performance by the plaintiff, and we hold that, in view of the admitted facts, there was no necessity to prove a tender of the rails. It was stipulated that the invoices were sent, together with bills of lading attached to the drafts, through a local San Francisco bank for collection, and that presentation was made to the defendant, and payment was by it refused, for the reason that war tax and state tolls had been added to the amount of the drafts. After that error was corrected, payment was refused on the ground that the vessel had been delayed in sailing from Baltimore, but payment was

promised as soon as news should come that the vessel had cleared the canal. When such news did come, payment was refused until the rails should arrive at San Francisco. But on June 14, 1920, before they arrived, the defendant wrote to the plaintiff, canceling its order. "If the buyer, before the time for delivery has arrived, notifies the seller that he will not accept delivery, the seller is excused from making a tender of the goods at the time and place fixed by the contract." 23 R. C. L. 1416. Section 1440 of the California Civil Code is in harmony with the text so quoted, as also are the decisions of the courts of that state. Passow & Sons v. Harris, 29 Cal. App. 559, 156 P. 997; Scribner v. Schenkel, 128 Cal. 250, 60 P. 860; Walker v. Harbor Business Blocks Co., 181 Cal. 773, 186 P. 356.

[6, 7] The defendant's contention that there was absence of proof of damage to the plaintiff is not sustainable. It is admitted that the measure of damages in such a case is the excess, if any, of the amount due from the buyer over the value to the seller, together with the expenses properly incurred by the latter in carrying the property to market, in excess of what would have been incurred, had the buyer accepted the goods. It is also admitted that the value of the property to the seller is the price which he could obtain therefor in the market nearest the place at which it should have been accepted by the buyer, and at such time after the breach of the contract as would have sufficed the seller with reasonable diligence to effect a resale. It was stipulated that the shipment was 631 tons of rails, including joints. It was in evidence that the rails were not of the type used for railways, but were much lighter in weight, and were such as were used generally in mines, lumberyards, and industrial tracks, and that a shipment of 631 tons of them was extremely large. A witness testified that 1,000 tons of such rails would meet the requirements of the entire Pacific Coast from Seattle to Los Angeles for a period of a year.

As showing that the market price of the rails was higher than the contract price at the time of the breach, the defendant points to certain sales that were made. But those sales were of small lots, sold at retail, and they have little value in determining what was the market value of the rails when offered in wholesale lots. There was evidence that at San Francisco the market value in May, June, July, and August, 1921, was from $45

to $50 per gross ton. But the defendant complains that no proof was offered of market price on April 13, 1921, the date when it says the contract was breached. But there was no breach in the defendant's refusal on April 13 to pay the drafts on account of certain excess charges therein. There was no breach until June 14, 1921, when the defendant repudiated the contract. Up to that time it was making promises of payment. In brief, there was evidence to the effect that the local market value was about $15 less than the contract price, and that the cost of carrying the rails from the ship to the market place was from $2.50 to $3 per ton.

[8] But the defendant contends that evidence of a sale made in July, 1922, more than a year after the arrival of the rails in San Francisco, at $32.50 per gross ton, was inadmissible as too remote in point of time, citing Strait v. Wilkins, 23 Cal. App. 774, 139 P. 911, a case which holds that a court is required, in the exercise of a sound discretion, to limit the proof of market value to a period reasonably proximate to that of the date of the breach. In the present case there was evidence that 1,000 tons of that class of rails would meet the requirements of the entire Pacific Coast for one year, and in view of the fact that 631 tons were to be disposed of in the San Francisco market, and it took the plaintiff a year to sell them, we are not convinced that discretion was abused in admitting testimony of market value at the date of the last sale which was made.

In Montgomery v. Sayre, 100 Cal. 182, 34 P. 646, 38 Am. St. Rep. 271, it was held that evidence of value for short periods before and after the date in question might be allowed in the discretion of the court. The court said that the jury had a right to consider the character and situation of the property and the usual methods by which sales of such property were effected. In Herdan v. Hanson, 182 Cal. 538, 543, 189 P. 440, it was held that the admission of evidence of value of merchandise at some months prior to the date of the execution of the contract was largely within the discretion of the trial court, and such is the general law as to the right of the seller. "He may resell at any time and in any state of the market, and the fact that he refrains from selling them for several months on a falling market will not prevent him from recovering in an action against the buyer for the deficiency." 24 R. C. L. 112.

The judgment is affirmed.