[Civ. No. 24746.   Second Dist., Div. Two.   Jan. 31, 1961.]

MELVILLE S. MILLER et al., Appellants, v. ERNEST J. WOOD et al., Respondents.

[Civ. No. 24747.   Second Dist., Div. Two.   Jan. 31, 1961.]

JOSEPH TAMPICO et al., Appellants, v. ERNEST J. WOOD et al., Respondents.

Loveless, Schauer & Clarke, Richard Schauer and David H. Lund for Appellants.

Howard J. Beck, in pro. per., and Frank S. Whiting for Respondents.

FOX, P. J.—This appeal involves two actions for the rescission of the purchase of real property and for damages. Plaintiffs Joseph and Berenice Tampico and Melville S. and Sarah B. Miller commenced separate actions against Ernest J. and Thelma A. Wood, vendors, and Howard J. Beck, broker, on August 12, 1958. Thereafter, both causes of action were consolidated for trial. Judgments were rendered for the defendants Wood on all counts, and against defendant Beck on the count for damages. Plaintiffs bring a consolidated appeal, on the judgment roll, from the trial court judgments. ▪ "Where the appellant has designated only the papers and records constituting the judgment roll and has not given notice to prepare a reporter's transcript, the judgment roll shall constitute the record on appeal. . . ." (Rule 5(f), Rules on Appeal.) ▪ Also, it must be presumed that the trial court received sufficient evidence to support its findings. (*White* v. *Jones*, 136 Cal.App.2d 567, 571 [288 P.2d 913].)

The findings relative to this appeal are as follows: In March of 1958 the Woods purchased two contiguous pieces of property in Pasadena, California. Soon thereafter they employed defendant Beck. Because the nature of this employment relationship is determinative, it is advisable to set forth the finding of fact which bears upon it. The findings in both Clerk's transcripts are identical: "On and after the 19th day of May, 1958 and theretofore, but subsequent to March 14, 1958, Defendant Howard J. Beck, a licensed California Real Estate Broker, was employed by Defendants Ernest J. Wood and Thelma A. Wood, and was authorized by Defendants Ernest

J. Wood and Thelma A. Wood to and did in fact act generally for the benefit of and on behalf of Defendants Ernest J. Wood and Thelma A. Wood, to manage said real property *and to handle the property dealings for [them] as their broker.*"* (Emphasis added.) It was further found that defendant Beck fraudulently induced the Tampicos to enter into a contract of purchase of one of the two parcels on May 19, 1958, by the making of five enumerated misrepresentations. The Millers were fraudulently induced to purchase the other parcel by Beck on or about June 24 of the same year, by the making of four enumerated misrepresentations. Both the Tampicos (July 24, 1958) and the Millers (July 30, 1958) discovered the falsity of the representations made by Beck and thereupon notified the Woods in writing of their discoveries and declared that they were rescinding the contract and purchase and offered to restore what they had received as a result of the transaction. The Woods were found to be free of culpable conduct themselves and had no knowledge of Beck's machinations until they received the Tampicos' notification.

It is not disputed that Beck's fraud was actionable. The dispute focuses on the question whether Beck was the agent of the Woods in negotiating the contracts of purchase. If he was, it is conceded that the Woods would be vicariously responsible for Beck's misrepresentations made in the course of negotiation. (Civ. Code, § 2319, subd. 2; *Crawford* v. *Nastos,* 182 Cal.App.2d 659 [6 Cal.Rptr. 425].)

Actual authority may be implied as well as express. Civil Code, section 2319, subdivision 1, confers upon an agent the authority to do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency. The question is whether the purpose of the agencies herein embodied the solicitation of purchasers and the negotiation of a deal.

It will be recalled that it was found by the trial court that Beck was employed to manage the real property in question and to handle property dealings for the Woods as their broker. The authority of a manager is in itself very broad. In *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, it was said at page 450 [159 P.2d 958]: "Actual authority may be implied as well as express and the implied powers of a general agent or manager are very broad, embracing authority to do all acts customarily connected with the business in which he is en-

*Finding Number 13 of the Miller transcript and Finding Number 15 of the Tampico transcript.

gaged.'' To the authority to manage is added the authority to handle property dealings generally and to act generally for the benefit of the principals. Furthermore, Beck was employed for these purposes as the Woods' *broker.* ▮ As we stated in *Tetrick* v. *Sloan,* 170 Cal.App.2d 540, 545 [339 P.2d 613], one of the primary functions of a broker is to negotiate a sale. (*Gunn* v. *Bank of California,* 99 Cal. 349 [33 P. 1105].) When these factors are all taken together, the implication of authority to negotiate the terms of a transfer that would be advantageous to the owners becomes inescapable.

Respondents argue that Beck was employed by the Tampicos and Millers as *their* agent and therefore his representations are chargeable to them. Assuming such an agency, the conclusion based thereon is not warranted by the decisions in this state. ▮ We have concluded that Beck was also the agent of the Woods, and ''generally, the fact that the broker or agent in a real estate transaction is the agent for both parties is no defense to an action by one of the parties to hold the other party responsible for misrepresentations with regard to such other party's property made to him by the broker or agent.'' (Anno., 58 A.L.R.2d 49.) This is the rule in this state. (See *Herdan* v. *Hanson,* 182 Cal. 538 [189 P. 440]; 58 A.L.R.2d 49, 50; *Owens* v. *Schneider,* 29 Cal.App.2d 593 [85 P.2d 198].) ▮ ''Where an agent common to two parties betrays one in favor of the other the second, of course, cannot charge the first with the agent's knowledge.'' (*Bowen* v. *Mount Vernon Sav. Bank,* 105 F.2d 796, 799 [70 App.D.C. 273], citing *Herdan* v. *Hanson, supra.*)

*Wright* v. *Lowe,* 140 Cal.App.2d 891 [296 P.2d 34], cited by respondents, is not in conflict with these cases. In this case as well as those cited above the party charged with the misrepresentations of the common agent was the person who stood to benefit by them, and the fact that the deceived party had also employed the agent was found not to have any bearing on the result. Our conclusion that the Woods are chargeable with Beck's misrepresentations regardless of whether Beck was also employed by the appellants is consistent with and dictated by these decisions.

It appears from the record that defendant Beck acquired, in the course of one of the transactions, a promissory note for $7,500 secured by a trust deed. It will be recalled that Beck's fraud in these transactions is not disputed. It follows that he should not be permitted to profit from his own wrong. (Civ. Code, §§ 2224 and 3517.) To prevent this possibility

and to nullify any benefits he may have acquired from these transactions the judgments in his favor on the counts for rescission for fraud should be reversed. Furthermore, since the amount of damages against Beck might be substantially different should rescission be ordered against the Woods at the new trial, the judgments against Beck on the counts for damages should also be reversed in the interest of justice and an orderly and complete disposition of the entire cause.

The judgment in each case is reversed.

Ashburn, J., and McMurray, J., pro tem.,* concurred.

A petition for a rehearing was denied March 1, 1961, and the opinion and judgment were modified to read as above.

*Assigned by Chairman of Judicial Council.