Opinion
MARSHALL, J.
The plaintiff secured a judgment against defendant for $308.29, with attorney’s fees in the amount of $80, $17.07 interest and costs. Defendant appeals. We deem the appeal meritorious.
In 1971, Floyd E. McLucas, the son of the defendant, wished to purchase furniture from plaintiff’s assignor but was told that more than his signature and that of his wife was required on the “Security Agreement.” (This is actually a contract of sale as well as a “security agreement.”) He therefore brought a friend, James McWilliams, to the *Supp. 11 store who signed the agreement; but plaintiff’s assignor declared that he needed still another signature before the sale could be consummated. McLucas then took his mother, the defendant, to the seller’s establishment arid when she signed the agreement, he was permitted to buy the furniture.
The four signatures appear at the bottom of the agreement. Before the names of Mr. and Mrs. McLucas and that of Mr. McWilliams, the printed words, “Purchaser (Debtor)” appear. On the fourth line is the defendant’s signature, preceded by the printed words, “Purchaser’s Address.”
Floyd McLucas testified that he was told that he needed “co-signers” before he could buy the furniture. The defendant also testified that her son asked her to sign as a “co-signer.”
The agreement does not designate defendant as “co-signer.” The complaint[1] declares that the “defendants” purchased the furniture which was delivered to the defendants, that the defendants promised to pay for the merchandise and that the defendants failed and refused to pay the balance due. The complaint further alleges that “all interest in the above security is herewith waived.”
The first affirmative defense of defendant Catherine McLucas is that she was the “surety only on the obligation” of her son, that all parties knew that her status was that of surety and that when the plaintiff’s assignor waived its security interest in the furniture, the defendant was exonerated from all liability. Defendant’s second affirmative defense declared that the “plaintiff or plaintiff’s alleged assignor materially altered the original obligation of the principal” without her consent and that she was therefore exonerated from liability.
The defendant testified that she was not the purchaser of the furniture, that she signed the agreement because her son wanted to buy the merchandise, that her son and not she took possession of the furniture, that she agreed to pay the debt only if her son and daughter-in-law failed to do so and that she was not a party to any alteration of the original agreement or to any agreement thereafter with the plaintiff’s assignor or the plaintiff.
*Supp. 12 The plaintiff testified that on March 15, 1974, Floyd McLucas came to his office and paid $25 on the furniture account. In April 1974, Floyd McLucas again came in and paid an additional $10. After the complaint was served on the defendant, he agreed to pay $10 per week on the balance due. Floyd McLucas testified that he had made the above payments of $25 and $10 to the plaintiff, that he had agreed to pay $10 per week but he only made two payments, that the defendant (Catherine McLucas) was not in plaintiff’s office when he (Floyd McLucas) agreed to make the weekly payments of $10 each and that she had not consented to any agreement between him and the plaintiff. The testimony of the defendant and Floyd McLucas is not controverted.
We have concluded that the contention of the plaintiff that defendant is a “purchaser” and as such liable for the unpaid balance is not valid. Preliminarily, we note that the preamble of the contract names only Floyd and his wife, as the purchasers and that the line on which defendant signed does not designate her as purchaser. Only the printed words, meaningless in these circumstances, “Purchaser’s Address” precede her signature.
Floyd McLucas testified that he was “told” to find someone to “co-sign” the agreement, that he brought in McWilliams to sign and finally that he “had his mother sign as a co-signer.” The term was not mentioned in the agreement.
The meaning of the hyphenated term, “co-signer,” has not been adjudicated^ nor does it acquire any legal significance by reason of its hyphenation. The term is incomplete. Is she a co-signer as a principal or purchaser or as a surety? While it may have acquired a meaning in the market place similar to that apparently ascribed to it by the plaintiff— that a co-signer is the same as a purchaser—no evidence has been offered to indicate that such is its meaning in common usage and we cannot so conclude.
The defendant contends to the contrary, that in response to a request to be a co-signer, she signed as a surety and she may point to the title of the questioned document, “Security Agreement,” in support of her contention. Such title may lead the court to. a determination that if there was a contract, it was (as to plaintiff’s assignor and the defendant) one of surety. On the other hand, defendant did testify that she was asked to sign as “co-signer” and in response thereto did sign below others who signed as “purchasers.” (Obviously, no legal significance one way or the *Supp. 13 other can be attached to the. two words that preceded her signature [“Purchaser’s Address”].) Plaintiff may argue that defendant’s status was intended to be the same as hér fellow signators. If “co-signer” meant “surety” to the defendant and “purchaser” to the plaintiff, there would be no consensus ad idem, no meeting of the minds, no mutuality and, therefore, no binding contract. (Raffles v. Wichelhaus (Ex. 1864) 2 H. & C. 906 [159 Eng.Rep. 375]; Peerless Glass Co. v. Pacific Crockery & Tinware Co. (1898) 121 Cal. 641 [54 P. 101].)
Were we to set aside for the moment the above considerations and assume arguendo that the legend, “Purchaser (Debtor),” was intended by plaintiff to precede defendant’s signature, the meaning to be derived from the four comers of the agreement would be that one of the buyers of the furniture was the defendant and that she was liable for payment thereon. However, the circumstances surrounding the execution of this agreement must nevertheless be examined to ascertain whether the words “Purchaser (Debtor)” meant the same thing to both parties even though such words may be facially clear and unambiguous. If evidence of such circumstances indicates that the words in question are actually susceptible of two or more meanings, such proof must be received in evidence so that the trier of fact can adjudge what meaning the parties really intended to ascribe to such words. (Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co. (1968) 69 Cal.2d 33, 39, 40 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.2d 1373].)
In addition, section 2832 of the Civil Code provides that one who appears to be a principal by the terms of a written instrument may show that he is in fact a surety except as against persons who “have acted on the faith of his apparent character of principal.” There is no evidence to indicate that plaintiff or his assignor came within the exception. In fact, the agreement’s first paragraph names only Floyd and his wife Roseanna as purchasers.
We may then consider the extrinsic evidence. The uncontradicted testimony indicates that the defendant intended to be a surety and not a principal or purchaser (even though she may have been asked to sign as a co-signer). Her testimony, corroborated by her son, was that she neither bought nor possessed the furniture and that she only agreed to pay for it if her son failed to do so. Such agreement is that of a surety: one who promises to answer for the default of another. (Civ. Code, § 2787; Ingalls v. Bell (1941) 43 Cal.App.2d 356, 365 [110 P.2d 1068].) The defendant is a classic example of a nonprofessional surety: a mother who *Supp. 14 seeks to help her 22-year-old son and her 18-year-old daughter-in-law to acquire furniture. Suretyship law throws up many defenses around such a person.
Among such defenses is exoneration of liability where the principal obligation is altered in any respect or where the remedies of the creditor against the principal are impaired or suspended in any way. (Civ. Code, § 2819; Lasky v. Bew (1913) 22 Cal.App. 393 [134 P. 358]; see Ralston-Purina Co. v. Carter (1962) 210 Cal.App.2d 372, 378 [26 Cal.Rptr. 690].)
In the instant case, the plaintiff altered the contract without defendant’s consent by agreeing with Floyd McLucas that he may make payments of $10 per week, thereby lengthening the term of the contract. The court in Wise v. Clapper (1968) 257 Cal.App.2d 770, 774 [65 Cal.Rptr. 231] held that such extension constitutes a material alteration of the original obligation, discharging the surety, and that under such circumstances, injury to the surety is presumed.
The plaintiff made one other alteration of the original contract by releasing his security interest in the furniture without the defendant’s consent. He did this in his complaint. Section 2849 of the Civil Code provides that the surety is entitled to the benefit of every security for the performance of the principal obligation “whether the surety was aware of the security or not.” Under the surety law, one who indemnifies the creditor is entitled to pursue his remedies against the property which served as security. (Massachusetts Bonding etc. Co. v. Osborne (1965) 233 Cal.App.2d 648 [43 Cal.Rptr. 761].) By releasing the security, the plaintiff has also released the surety.
Judgment is reversed. Appellant to recover costs on appeal.
Alarcon, J., concurred.

The complaint names all four signators but was apparently served only on Mrs.. Catherine McLucas, hereinafter referred to as “the defendant.”