Charles H. ALBERDING,
Plaintiff-Appellee,

v.

Everett S. M. BRUNZELL and Dana
Brunzell, Defendants-Appellants.

Charles H. ALBERDING,
Plaintiff-Appellant,

v.

Everett S. M. BRUNZELL and Dana
Brunzell, Defendants-Appellees.

Nos. 76–2456, 76–2489.

United States Court of Appeals,
Ninth Circuit.

July 30, 1979.

Raymond B. Little, Stewart & Horton, Ltd., Reno, Nev., for defendants-appellants.

Robert E. Lyle, Reno, Nev., for plaintiff-appellee.

* Honorable Walter E. Craig, United States District Judge for the District of Arizona, sitting by designation.

OPINION

Appeal from the United States District Court for the District of Nevada.

Before WRIGHT and KENNEDY, Circuit Judges, and CRAIG,* District Judge.

KENNEDY, Circuit Judge:

This case arises from an action for contribution brought by a surety (Alberding) against one of his cosureties (the Brunzells). In 1962, Alberding, Brunzell, Gaylord Pritchard, and Frank Jackson formed a corporation, Jack London Inn, Inc., for the purpose of financing, constructing, and operating the Jack London Inn. California was the corporation's domicile, the state where the Inn was located, and the state where substantially all of the transactions described below took place.

In order to finance the hotel, the corporation obtained a $950,000 loan from the State Mutual Savings and Loan Association in return for a first deed of trust on the Inn. Additional financing in the sum of $300,000 was secured from Westinghouse Credit Corporation in exchange for a second deed of trust and personal guarantees from each of the four investors.[1] Alberding acquired a third deed of trust in exchange for a $50,-000 loan.

Over time the Inn experienced financial problems and was unable to meet its obligations. On October 31, 1966, State Mutual foreclosed against the property and after advertising a sale, itself purchased the property for the amount of its first deed of trust. As a consequence, Westinghouse's security interest in the Inn was extinguished.

Subsequently, Westinghouse commenced a lawsuit against Alberding in the United States District Court for the Northern District of Illinois, and on April 26, 1966 summary judgment was entered in favor of

1. The note was also signed by the wives of the three investors living in community property states—Brunzell, Jackson and Pritchard.

Westinghouse for $364,422.97, with interest at 5% and costs. Thereafter, pursuant to a schedule which extended payments over several years, Alberding made payments in discharge of the Westinghouse judgment. The payments totalled $427,868.08, of which $205,048.08 was paid after August 20, 1969.

On August 20, 1973, Alberding filed his action for contribution against the Brunzells in the District of Nevada, the state of the Brunzells' residence. After a trial without jury, the court ruled that there was no complete bar to recovery, and that the Nevada four year statute of limitation applied so that recovery was limited to amounts expended after August 20, 1969. The judge held the Brunzells liable for $106,967.02, one-fourth of the total payments made by Alberding, and awarded interest at 5% per annum.

*The Right of Contribution*

■ Under the general rule followed in California,[2] a surety who pays for more than his share of a joint obligation is entitled to contribution from his cosureties. Cal.Civ.Code § 1432. This right is not without its limitations, however, and a party may be barred from recovery.

■ Initially, the Brunzells argue that recovery is barred because Alberding and Westinghouse failed to preserve the security. They contend the Inn was worth substantially more than the total of the encumbrances upon it and that therefore when State Mutual foreclosed, Alberding and Westinghouse, as junior interest holders, were required to purchase the property at the trustee's sale to prevent their security interests from being extinguished. Appellees cite Cal.Civ.Code §§ 2849, 2850 which give sureties the benefit of security for performance of the principal obligation and provide that property of the principal be the first source of discharge if property of both the principal and the surety secure the obligation. These sections, however, are directed to cases where a principal voluntarily gives up his security interest, *see Wexler v.*

*McLucas*, 48 Cal.App.3d Supp. 9, 121 Cal. Rptr. 453 (App.Dep't Super.Ct.1975), or where the principal sells the security for less than its value, *see Montgomery v. Sayre*, 100 Cal. 182, 34 P. 646 (1893). Under appellees' theory, Westinghouse and Alberding in order to preserve their rights against the sureties would have been required to spend at least $950,000 to purchase the mortgaged property despite the fact that their combined interest in the Inn totalled only $350,000. Appellees cite no cases in which junior security holders were saddled with such an onerous burden, and we find this contention to be without merit.

■ Next, the Brunzells claim that Alberding should not be awarded contribution because he lacked clean hands and because he suffered no loss. Specifically, appellees point to the fact that subsequent to the foreclosure by State Mutual, Alberding purchased the property from State Mutual at a price which appellees allege was substantially below its fair market value. However, there was no showing of collusion between Alberding and Westinghouse. Absent collusion, the only aspect of the case which raises any question at all is that Alberding, apparently because of his financial situation, was able to make subsequent investments in an attempt to cover his losses. We agree with the district judge, who commented that equity is more than just a "feeling on how something ought to be" and that a mere showing that one party has more money than the other is not enough to destroy the right of contribution.

*Statute of Limitation*

The district judge applied the Nevada four-year statute of limitation rather than the two-year California period. Both parties agree that statutes of limitation are a procedural matter governed by the law of the forum. However, Nevada law contains a borrowing statute which provides as follows:

> See *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Neither party contests this holding.

---

**2.** Because of the significant contacts with California, the district court ruled that Nevada courts would apply California substantive law.

When a cause of action has arisen in another state, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this state, except in favor of a citizen thereof who has held the cause of action from the time it accrued. Nev.Rev.Stat. § 11.020. The critical question therefore is where this cause of action arose.

■ No recent Nevada decision has considered this issue; but, in *Lewis v. Hyams,* 26 Nev. 68, 63 P. 126 (1900), and *Wing v. Wiltsee,* 47 Neb. 350, 223 P. 334 (1924), the Nevada Supreme Court established that the cause of action on an obligation accrues in the place where the defendant resided when the obligation came due. The reasoning behind the rule was that a cause of action arises in the place where the defendant can be sued, and at the time those cases were decided, personal jurisdiction could only be obtained in the state of residence. *Lewis,* 26 Nev. at 81, 63 P. at 127.

The Brunzells argue that with the advent of modern long-arm statutes, personal jurisdiction is no longer confined to the state of residence. They contend, therefore, that the rule is outmoded and that it is more in keeping with modern realities to borrow the statute of limitation of the place with the most significant contacts. While the Brunzells' analysis is sensible, we cannot conclude that the old Nevada rule is so without usefulness that we can assert with confidence that Nevada state courts would reject it if given the chance.

Although most states have some type of borrowing statute, there is no uniformity in their method of operation. *See* A. De Cervera, The Statute of Limitations in American Conflicts of Laws 69–102 (1966); Vernon, *Statutes of Limitation in Conflicts of Laws: Borrowing Statutes,* 32 Rocky Mt.L.Rev.

287 (1960). As one commentator has noted, borrowing statutes are "so diverse that they have produced a great deal of confusion." R. Leflar, American Conflicts of Law 308 (1968). There is agreement that the place-of-accrual test is "ambiguous" if not "entirely unworkable" and the difficulties are compounded in the case of causes of action for contracts. A. Ehrenzweig, Conflict of Laws 430 (1962). *See George v. Douglas Aircraft Co., Inc.,* 332 F.2d 73, 78–79 (2d Cir.), *cert. denied,* 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964); Ester, *Borrowing Statutes of Limitation and Conflict of Laws,* 15 U.Fla.L.Rev. 33, 48 (1962); *Vernon, supra* at 300–10. This difficulty alone may justify reliance on a simple mechanical test of residence.

There is an additional reason why some courts and commentators have accepted a place-of-residence test. All states with borrowing statutes, except Ohio, borrow not only the statute of limitation period but also the tolling provisions of the other state, *see* A. Ehrenzweig, *supra* at 430–31, *i. e.,* those provisions which suspend the running of the period on certain contingencies such as the defendant's absence from the state, *see, e. g.,* Cal.Civ.Proc. § 351.[3] The result of the practice is that if the forum borrows the statute of a state in which the defendant does not reside, the defendant is likely to be subjected to a very long limitation period since the borrowed statute may have been tolled by the defendant's absence from that state. *See, e.g., West v. Their,* 15 Idaho 167, 96 P. 932 (1908); *Developments—Statutes of Limitations,* 63 Harv.L. Rev. 1177, 1263–64 (1950). The problem has been recognized and one solution has been to treat the defendant's residence as the place of accrual. *See* 51 Harv.L.Rev. 1290 (1938) (discussing *Pattridge v. Palmer,* 201 Minn. 387, 277 N.W. 18 (1937)); *Developments—Statutes of Limitations, supra* at 1263–64. *See also, Vernon, supra* at 306.

---

**3.** This California tolling provision apparently applies to a defendant who is absent from the state and who does not have a California agent for service of process even though the defendant is subject to process under the long arm statute. *Garcia v. Flores,* 64 Cal.App.3d 705, 134 Cal.Rptr. 712 (Ct.App.1976); 43 Cal.Jur.3d, Limitations of Actions § 142. Therefore, in this case, even if the California statute of limitation were applied, it would be necessary to remand to determine if the limitation period had been tolled.

In fact, Iowa has specifically incorporated this approach into its borrowing statutes. Iowa Code § 614.7. *See also* Ind.Ann.Stat. § 34–1–2–6.

The rule has been stated that in diversity cases a district court's construction of the law in the state in which it sits must be accepted unless it is clearly wrong. *d'Hedounville v. Pioneer Hotel Co.*, 552 F.2d 886, 895 (9th Cir. 1977). In this case, where there is Nevada Supreme Court authority on point and where the approach adopted by those cases continues to have contemporary justification, we believe we should follow the rule of deference to the district court. We affirm the conclusion that the applicable limitation period is fixed by the Nevada statute.

*Base and Rate of Proration*

█ Although generally a cosurety is not liable for more than his prorata share of the debt, the rule has been repeatedly stated that if some of the cosureties are insolvent or beyond the jurisdiction of the court, they will be excluded from the calculation and the entire burden distributed among the ones remaining. *See* Restatement of Restitution § 85, Comment (h); Stearns, The Law of Suretyship §§ 11.28, 11.29 (5th ed. 1951); 18 Am.Jur.2d, *Contribution* § 28; 18 C.J.S. *Contribution* § 6b; *Moody v. Bass*, 357 F.2d 730, 732 (8th Cir. 1966); *Mansfield v. McReary*, 263 Or. 41, 501 P.2d 69, 70 (1972). The justification for this approach seems to be that if one surety has paid more than his share, it is unfair to place on him the full burden of pursuing all the other cosureties.

The district court acknowledged this doctrine but felt that absolute adherence to it was inappropriate in view of modern long-arm statutes. The court found that the plaintiff could have obtained jurisdiction over all of the cosureties if he had sued in California and that the plaintiff had not carried his burden of proving that recovery

against the absent cosureties was barred by reason of insolvency or otherwise. The court concluded that since "[e]quity should require the paying guarantor to bring his action for contribution in the jurisdiction where all the guarantors can be made parties," the traditional rule concerning absent cosureties was not applicable and the Brunzells should be liable only for their prorata share of one fourth. It should be noted that the district court ruled that California law would govern the issue of contribution. It appears that the California courts have not passed upon the question.

The district court's approach is consistent with the rationale of the old rule, but unfortunately we have found very little authority to support it. The vast majority of cases and commentators assert without qualification that absent cosureties are to be excluded from the calculation. On the other hand, none of these authorities appear to have considered the problem posed by this case. In fact, our research has revealed only one case which has specifically addressed the argument urged by the appellees and accepted by the district court. *Manning v. Cambell,* 204 N.Y.S.2d 718 (Sup. Ct.1960). There, the plaintiff, a nonresident, sued a New York defendant for contribution. The court reached a conclusion similar to the one of the district court in our case. The New York court held that since the three absent cosureties, being residents of the same state as the plaintiff, could easily be sued in that state by the plaintiff, it was inequitable to hold the New York defendant liable for any more than his one-fifth share.

In our case, the plaintiff was from Illinois and had chosen to sue the defendant in Nevada. There is no indication that it would have been any more burdensome to sue instead in the neighboring state of California.[4] Under these facts, therefore, we

---

4. Of course, if the action had been brought in California, the two year California statute of limitations might have been applied given the California tolling provision, see note 3 *supra*. However, plaintiff has not proved that the action would necessarily be barred. Further, Al-

berding also argues that of the two California sureties, one was bankrupt and the other dead. However, the deceased surety's wife also signed the guarantee and there was no evidence that she had died or been otherwise relieved of the obligation. With respect to the

agree with the conclusion of the district court. While there is no reason that the plaintiff should have to bear the burden of multiple suits to collect from all the sureties, there is also no reason to encourage multiple suits where the entire matter could have been settled in one lawsuit in a forum no more inconvenient than the one actually selected. Although we admit there is limited authority in support of this position, we have not been directed to any cases which have reached a contrary conclusion after considering a like situation.

■ An additional problem remains. The total amount paid by Alberding to the creditor, including amounts paid before 1969, was $427,868.08. The court held that the Brunzells were liable for one quarter of this sum, a liability equal to $106,967.02. The Brunzells contend that by holding them liable for one fourth of the total amount, the district court has not given proper effect to the statute of limitation. We do not agree. The statute of limitation prevents the surety's recovering on a theory of implied contract from a cosurety for amounts expended during the barred period, but the statute does not prevent reference to the barred period to determine the total sum the surety has paid on the principal obligation. Here, Alberding was entitled to show the total sums paid in both the barred and the unbarred periods and then to recover from the Brunzells for the sums paid in the unbarred period, up to the amount of the Brunzells' prorata share of their liability on the debt.

*Interest*

■ The district court held that the interest rate on the sums advanced by Alberding for the Brunzells' share should be 5% per annum, the same rate as fixed by the Westinghouse contract. Alberding contends that he was entitled to the higher statutory interest rate prescribed by Nev. Rev.Stat. § 99.040. That section provides that a 7% interest rate "shall be allowed . . . . [u]pon contracts, expressed or im-

plied, other than book accounts" where there is no other rate fixed by an express contract in writing. Appellees assert that this provision is mandatory in actions at law but discretionary in equitable proceedings. We have found no support for this proposition and the mandatory language of section 99.040 belies such an interpretation. *See Paradise Homes, Inc. v. Central Surety & Ins. Corp.*, 84 Nev. 109, 116, 437 P.2d 78, 83 (1968). The district court did not take a contrary view of Nevada law. Instead, it relied on the Westinghouse contract as an express agreement between Alberding and Brunzell fixing the interest rate. We conclude that the district court erred in applying the interest rate of the Westinghouse contract.

■ This suit between Alberding and Brunzell is not based on the Westinghouse note; nowhere in that note do either of the parties make any express promises to each other. The suit is instead based on a contract implied in law that the Brunzells would pay their contributory share of the obligation. As a California court has stated, "[a]n action for contribution is not an action on the original contract, but is one to enforce the right of contribution upon an implied contract." *Pacific Freight Lines v. Pioneer Express Co.*, 39 Cal.App.2d 609, 614, 103 P.2d 1056, 1059 (Ct.App.1940). *See* 14 Cal.Jur.3d, *Contribution & Indemnification* § 2; 18 C.J.S. *Contribution* § 2. Therefore, since this cause of action is based on an implied contract between Alberding and the other cosureties, the mandatory language of section 99.040 comes into play.

Appellee argues that 7% interest would result in Alberding being unjustly enriched since he only had to pay 5% interest to Westinghouse on the principal obligation. This argument is completely without merit. In allocating the Westinghouse liability between the cosureties the judge properly based his calculations on the total amount paid in discharge of the personal obligation, principal plus interest. The purpose of the

insolvent surety, the district court specifically found that Alberding had failed to carry his

burden of proving that this obligation had been discharged in bankruptcy.

**480**

action is to compensate Alberding for sums advanced on the Brunzells' behalf, and in fixing the interest on those payments it does not matter what the interest rate was on the original obligation. It is irrelevant what interest rate was awarded in that judgment since each cosurety is liable for his share of the total amount. Once Alberding paid more than his share of the total judgment, he was entitled to collect the excess from his cosureties. The excess is like any other debt and Alberding is entitled to the statutory interest.

AFFIRMED in part, REVERSED in part.