Gennifer FLOWERS, Plaintiff,

v.

James CARVILLE, George Stephanopoulos, Little, Brown & Company, Hillary Rodham Clinton, Defendants.

No. CV–S–99–1629–PMP LRL.

United States District Court,
D. Nevada.

Aug. 24, 2000.

Rex Bell, Bell Lukens Marshall & Kent, Las Vegas, NV, Larry Klayman, Judicial Watch, Inc., Washington, DC, John Lukens, Bell Lukens Marshall & Kent, Las Vegas, NV, for Flowers, Gennifer, Plaintiff.

Paul Hejmanowksi, Lionel, Sawyer & Collins, Las Vegas, NV, Jo Bennett Marsh, McDaniel & Marsh, William Alden McDaniel, McDaniel & Marsh, Baltimore, MD, Walter Cannon, Rawlings, Olson, Cannon, Et Al, Las Vegas, NV, David E. Kendall, Williams & Connolly, Washington, DC, Mara W. Murphy, Williams & Connolly, Washington, DC, Nicole K. Seligman, Williams & Connolly, Washington, DC, Andrew Gordon, McDonald, Carano, Wilson, Et Al, Las Vegas, NV, Laura R. Handman, Davis Wright Tremaine LLP, Washington, DC, Matthew A. Leish, Davis Wright Tremaine LLP, New York City, for Defendants.

## ORDER

PRO, District Judge.

## I. INTRODUCTION

Presently before this Court are five motions. The first, is a Motion to Dismiss the First Amended Complaint filed by Defendant Hillary Rodham Clinton ("Clinton") on March 15, 2000 (Doc. # 17). Plaintiff Gennifer Flowers ("Flowers") filed an Opposition on May 4, 2000 (Doc. # 64). On May 26, 2000, Defendant Clinton filed a Reply (Doc. # 84).

The second, is a Motion to Dismiss the First Amended Complaint filed by Defendant James Carville ("Carville") on March 15, 2000 (Doc. # 18). On May 4, 2000, Flowers filed an Opposition (Doc. # 63). Carville filed a Reply on May 24, 2000 (Doc. # 81).

The third, is a Motion to Dismiss the First Amended Complaint filed by Defendants George Stephanopoulos ("Stephanopoulos") and Little, Brown & Company on March 31, 2000 (Doc. # 26). Flowers filed an Opposition on June 5, 2000 (Doc. # 89). On June 19, 2000, Stephanopoulos and Little, Brown & Company filed a Reply (Doc. # 92).

The fourth, is a Motion for Leave to Amend the First Amended Complaint filed by Plaintiff Flowers on May 4, 2000 (Doc. # 65). Stephanopoulos and Little, Brown & Company filed a Response to Plaintiff's Motion for Leave to File a Second Amended Complaint on May 23, 2000 (Doc. # 80). Carville filed an Opposition on May 24, 2000 (Doc. # 82) and on May 26, 2000, Clinton filed an Opposition (Doc. # 86). Flowers filed a Reply to Carville's Opposition on June 7, 2000 (Doc. # 90) and a Reply to Clinton's Opposition on June 9, 2000 (Doc. # 91).

On July 18, 2000, the Court conducted a hearing regarding the above four motions. A fifth motion seeking leave to file a Third Amended Complaint was filed by Flowers on July 31, 2000 (Doc. # 96). On August 4, 2000, Stephanopoulos and Little, Brown & Company filed their Opposition (Doc. # 97). Clinton filed an Opposition on August 8, 2000 (Doc. # 98). Flowers filed a Reply to Stephanopoulos and Little, Brown & Company's Opposition on August 10, 2000 (Doc. # 99). On August 15, 2000, Carville filed an Opposition (Doc. # 100).

## II. FACTUAL BACKGROUND

This case was originally filed by Flowers on November 18, 1999, against Carville, Stephanopoulos and Little, Brown & Company. The Complaint contained causes of action for Defamation and False Light. The Complaint was amended on January 20, 2000, adding Defendant Hillary Rodham Clinton. The First Amended Complaint contains causes of action for Defamation as to all Defendants, False Light as to all Defendants, Invasion of Privacy (Publicity given to Private Life) against Defendant Clinton, Invasion of Privacy (Intrusion into Seclusion) against Defendant Clinton and Conspiracy as to all Defendants.

Essentially, Flowers alleges that during the 1992 presidential campaign, Defendant Hillary Clinton organized and directed a campaign "War Room" to attack and smear Flowers and other individuals in an effort benefit the candidacy of Bill Clinton for President of the United States. (First Am. Compl. ¶ 7). Flowers alleges that both Carville and Stephanopoulos were active participants of the "War Room" conspiring with Defendant Clinton to defame Flowers. (First Am. Compl. ¶ 8).

Flowers claims that Carville and Stephanopoulos have continuously defamed her and portrayed her in a false light since 1992. Flowers specifically alleges that Carville made defamatory statements in a book he co-authored called *All's Fair: Love, War and Running for President,* published in 1994 [1] and on a Larry King

---

1. Although Mary Matalin co-authored *All's Fair: Love, War and Running for President,* she was not named as a Defendant in this action.

Live interview broadcast on January 21, 1998. (First Am. Compl. ¶¶ 10–13). Stephanopoulos is alleged to have made defamatory statements in his book *All Too Human: A Political Education*, published in 1999[2] and in statements made during a Larry King Live interview broadcast on February 2, 1998. (First Am. Compl. ¶¶ 14, 15). In seeking leave to file a Third Amended Complaint, Flowers contends that Stephanopoulos made an additional defamatory statement on May 20, 2000, during an interview by Tim Russert on a CNBC cable television show. The latest statements alleged by Flowers to be defamatory relate to particular tape recorded conversations between President Clinton and Flowers in 1992. (First Am. Compl. ¶ 11).

Additionally, Flowers alleges that Defendant Hillary Clinton invaded her right to privacy by publicly disclosing private facts concerning Flowers and that Defendant Clinton was responsible for individuals breaking and entering her residence on numerous occasions. (First Am. Compl. ¶¶ 37, 41).

## III. LEGAL STANDARD FOR MOTION TO DISMISS

In considering the three Motions to Dismiss, the factual allegations of Flowers' Complaint must be presumed to be true, and this Court must draw all reasonable inferences in favor of Plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). The issue is not whether Plaintiff will ultimately prevail, but whether she is entitled to offer evidence in support of her claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Consequently, the Court may not grant a Motion to Dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*,

355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court does not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in Plaintiff's Complaint. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

## IV. DISCUSSION

Each Defendant argues that a number of Flowers' claims should be dismissed because they are barred by the applicable statute of limitations. Stephanopoulos and Little, Brown & Company specifically contend that the statute of limitations of another jurisdiction should govern under Nevada's borrowing statute and that the substantive law of another state should be applied. Flowers responds by asserting that the Nevada statute of limitations is applicable, that Defendants conduct constitutes a continuing violation, thereby making Flowers' claims timely, and that Nevada substantive law applies.

Clinton, Stephanopoulos and Little Brown & Company also contend that the particular statements upon which Flowers bases her defamation claim are not defamatory and that Flowers will be unable to show that any Defendants acted with "actual malice," a requirement for recovery by a public figure.

Clinton contends that Flowers' claim for false light is not recoverable since it is duplicative of her defamation claim. She also argues that Flowers' claims for invasion into seclusion and public disclosure of private facts are vague and were not brought within the statute of limitations. Clinton asserts that because Flowers' other claims fail, so to does her claim for civil conspiracy. Flowers challenges these arguments and attempts to amend her Complaint by pleading special damages with

**2.** Little, Brown & Company is named as a Defendant in this action as the publisher of Stephanopoulos' book.

more particularity and by including a recent statement by Stephanopoulos that she alleges to be defamatory.

### A. Statute of Limitations

#### 1. Statements made by Stephanopoulos

■ In federal diversity cases, the statute of limitations in the state in which the action is brought is generally controlling. *Bancorp Leasing and Fin. Corp. v. Agusta Aviation Corp.*, 813 F.2d 272, 274 (9th Cir.1987) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751–753, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980)). Nevada's statute of limitations for libel and slander is two years. Nev.Rev.Stat. § 11 .190 (1998). Stephanopoulos and Little, Brown & Company argue, however, that New York's one year statute of limitations for defamation claims should govern in accord with Nevada's borrowing statute. N.Y. C.P.L.R. § 215(3) (McKinney 1999).

■ Borrowing statutes are designed to prevent forum shopping and Nevada's borrowing statute provides:

When a cause of action has arisen in another state, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this state, except in favor of a citizen thereof who has held the cause of action from the time it accrued.

Nev.Rev.Stat. § 11.020 (1998). Under Nevada's borrowing statute, if a cause of action arose in another state and would be barred by that state's statute of limitations then the action could not be maintained in Nevada.

■ In Nevada, a plaintiff's cause of action arises where the particular defendant resides at the time of the alleged tortious conduct. *Alberding v. Brunzell*, 601 F.2d 474, 477 (9th Cir.1979); *Lewis v. Hyams*, 26 Nev. 68, 63 P. 126 (1900); *Wing v. Wiltsee*, 47 Nev. 350, 223 P. 334 (1924). "[T]he Nevada Supreme Court established that the cause of action on an obligation accrues in the place where the defendant resided when the obligation came due." *Alberding*, 601 F.2d at 477. While *Alberding* dealt solely with an obligation, its holding is no less applicable to claims involving multistate defamation where the likelihood of forum shopping is even greater. Although the Ninth Circuit Court of Appeals noted in *Alberding* that an alternative and more modern approach to the "place-of-residence test" would be to use the statute of limitations of the state with the most significant contacts, the Court commented that "we cannot conclude that the old Nevada rule is so without usefulness that we can assert with confidence that Nevada state courts would reject it if given the chance." *Id.*

Flowers cites *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), to support her argument that the tort of libel is generally held to occur where the offending material is circulated. *Keeton* however, dealt specifically with the issue of personal jurisdiction and not choice of law. *Id.* at 778, 104 S.Ct. 1473. If this Court were to conclude that Flowers' multistate defamation claims accrued where publication occurred, accrual would take place nationwide. The practical effect would be the exemption of defamation claims from borrowing statutes altogether. *Patch v. Playboy Enterprises, Inc.*, 652 F.2d 754, 756, 757 (8th Cir.1981).

■ Found within the last sentence of Nevada's borrowing statute is an exception preventing its application when a citizen of Nevada "has held the cause of action from the time it accrued." Nev.Rev.Stat. § 11.020. Stephanopoulos and Little, Brown & Company argue that the exception is not applicable as Flowers was not a Nevada citizen at the time her causes of action accrued. Though not controlling precedent, two unpublished decisions relied upon by Stephanopoulos and Little, Brown & Company support this Court's

determination that Plaintiff Flowers must have been a Nevada citizen when her claims accrued in order to employ the exception found in Nevada's borrowing statute.

In *Mikhail v. Steak and Ale of La.*, CV89–3790 (Nev.2d. Dist.Ct. Apr. 10, 1990), a state district court concluded that because a plaintiff was not a Nevada resident at the time his claim arose, the exception to Nevada's borrowing statute was not applicable. The Court in *Volz v. DeLorean Mfg. Corp.*, No. CV–N–86–102–HDM (D.Nev. Feb. 18, 1987), examined how the exception was applied in other jurisdictions including California, Idaho and Utah since Nevada law was silent on the issue. The Court concluded that the goals of providing uniformity between state statutes of limitation and preventing forum shopping justified the requirement that a plaintiff be a citizen of Nevada when her claims arose.

At the time of the Larry King Live interview on February 2, 1998, it is undisputed that Stephanopoulos was a resident of New York. As a result, and in accord with Nevada's borrowing statute, Flowers' defamation claim resulting from statements made by Stephanopoulos during that interview arose in New York and is subject to the one year statute of limitations for defamation claims. Moreover, Flowers cannot employ the exception found in Nevada's borrowing statute since she was not a Nevada citizen until sometime during the summer of 1998. Thus, Flowers' claim based upon Stephanopoulos' Larry King Live interview on February 2, 1998, is barred by New York's one year limitation period for defamation actions. However, Flowers' claims relating to Stephanopoulos' book, *All Too Human: A Political Education*, and his statement of May 20, 2000, are timely under either the New York or Nevada statute of limitations.

### 2. Statements made by Carville

Flowers' defamation claim based upon Defendant Carville's book, *All's Fair:*

*Love, War and Running for President,* which was published in 1994, is clearly barred by Nevada's statute of limitations as well as those of the other states referenced by the parties. Carville does not argue that Nevada's borrowing statute applies with respect to his statement during the Larry King Live interview of January 21, 1998. As a result, the Court will limit its discussion of that particular statement of Carville's to the issue of whether it is defamatory.

### B. The Overwhelming Interest Test

While arguing that Nevada's statute of limitations does not apply to Flowers' claims, Stephanopoulos and Little, Brown & Company also contend that the substantive law of New York should apply. New York makes recovery under defamation claims more difficult and does not generally recognize the tort of false light.

In *Motenko*, the Nevada Supreme Court adopted the "overwhelming interest" approach to determine which state's substantive law should apply. *Motenko v. MGM Dist. Inc.*, 112 Nev. 1038, 921 P.2d 933 (1996). Under this approach, the law of the forum governs unless another state has an "overwhelming interest" in adjudicating the matter. An "overwhelming interest" will exist if two of the following factors are found: 1) it is the place where the conduct giving rise to the injury occurred; 2) it is the place where the injury is suffered; 3) parties have the same domicile, residence, nationality, etc. and it is different from the forum state; or 4) it is the place where the relationship is centered if any. *Id.* at 935.

In applying the factors set forth in *Motenko*, the Court finds that no other state has an overwhelming interest in adjudication of this matter. The conduct giving rise to injury occurred where the alleged defamatory statements were made and broadcast. The Larry King Live interviews took place in Washington D.C. and Stephanopoulos' book was published in

New York, although the statements at issue were made to a national audience. The place where the injury was suffered is also national in scope since Flowers would have suffered an injury in every state, although she apparently resided in Texas when the book was published and the television programs aired. Because Flowers has resided in Nevada since the summer of 1998, her alleged injury would also be acutely felt here. The third factor is not implicated and where the parties relationship is centered is unclear. Arguably every state would have an interest in the resolution of this case, but no particular state has an overwhelming interest and thus the substantive law of Nevada should apply.

## C. Continuing Violations

■ Flowers argues that her causes of action allege continuing violations by Defendants and as such those claims are timely under the applicable statute of limitations. Under a continuing tort theory, the limitations period does not begin to run until the tortious conduct ends. Numerous cases, however, have held that a cause of action for defamation accrues immediately upon the occurrence of the tortious act and thus is not appropriate for the continuing violation exception. *Flotech Inc. v. E.I. DuPont de Nemours Co.*, 627 F.Supp. 358, 363 (D.Mass.1985), *aff'd*, 814 F.2d 775 (1st Cir.1987); *Lettis v. United States Postal Service*, 39 F.Supp.2d 181, 205 (E.D.N.Y.1998); *Procter & Gamble Co. v. Amway Corp.*, 80 F.Supp.2d 639, 652 (S.D.Tex.1999); *Celli v. Shoell*, 995 F.Supp. 1337, 1345 (D.Utah 1998); *Porta v. Fee*, 1998 WL 334355, at *1 (E.D.Pa. June 24, 1998). In addition, where defamation cases involve similar discrete acts of republication of the same material, most courts have rejected the continuing violation theory adopting instead the single publication rule. *Hyde v. Hibernia National Bank in Jefferson Parish*, 861 F.2d 446, 449, 450 (5th Cir.1988). If republication of the same material is inappropriate for the continuing violation theory then

separate and distinct defamatory statements should not be viewed as continuing torts either. Noting the difference in time between the alleged defamatory statements and the fact that they are easily identifiable from one to the next, the continuing violation theory does not apply to Flowers' defamation claims.

## D. The Alleged Defamatory Statements

■ Whether a statement is defamatory is a question of law. *Branda v. Sanford*, 97 Nev. 643, 637 P.2d 1223, 1225–1226 (1981). Generally, if a statement could have different meanings, one of which is defamatory, the ambiguity must be resolved by the trier of fact. *Posadas v. City of Reno*, 109 Nev. 448, 851 P.2d 438, 442 (1993).

■ A statement is defamatory when " '[u]nder any reasonable definition[,] such charges would tend to lower the subject in the estimation of the community and to excite derogatory opinions against him and to hold him up to contempt.' " *Id.* (quoting *Las Vegas Sun v. Franklin*, 74 Nev. 282, 329 P.2d 867, 869 (1958)). A court " 'must examine the context in which the statements were made' " to determine whether the statements are protected under the First Amendment. *Id.* (citation omitted).

■ While defamatory speech is not protected under the First Amendment, courts must be vigilant in protecting political speech which facilitates national discussion and debate. A statement made in the form of an opinion containing a factual assertion may not be afforded constitutional protection. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). However, "statements of opinion on matters of public concern that do not contain or imply a provable factual assertion" are entitled to constitutional protection. *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir.1995). "In cases involving political

comment, there is a strong inclination to determine the remarks to be opinion rather than fact." *Nevada Independent Broadcasting Corp. v. Allen,* 99 Nev. 404, 664 P.2d 337, 342 (1983).

█ In determining whether alleged defamatory statements include a factual assertion three factors are relevant: 1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; 2) whether the defendant used figurative or hyperbolic language that negates that impression; and 3) whether the statement in question is susceptible of being proved true or false. *Partington v. Bugliosi,* 56 F.3d 1147, 1153 (9th Cir.1995) (citing *Unelko Corp. v. Rooney,* 912 F.2d 1049, 1053 (9th Cir.1990)).

█ The Court finds that Carville's statement made on Larry King Live on January 21, 1998,[3] is clearly an expression of opinion not a factual assertion. Carville accurately refers to a CNN investigation and news report that taped conversations between President Clinton and Flowers were at least edited. He relies on such reports as the basis for his opinion and Flowers does not dispute that both CNN and KCBS made such reports. Carville's statement is thus not capable of a defamatory meaning.

█ Similarly, the Court finds that statements made in Stephanopoulos' book are not actionable.[4] As to the statements

making reference to "trash," "crap" and "garbage," both the nature of the comments as well as the context in which the statements were originally made, in the midst of a political campaign, support a finding that the statements were rhetorical hyperbole. *See Milkovich,* 497 U.S. at 20, 110 S.Ct. 2695; *Gilbrook v. City of Westminster,* 177 F.3d 839, 862–863 (9th Cir. 1999) (comparing a union opponent to "Jimmy Hoffa" during a labor dispute was not actionable because of the context and because it did not rest on objective evidence); *Levinsky's Inc. v. Wal–Mart Stores Inc.,* 127 F.3d 122, 130 (1st Cir. 1997) (holding the word "trashy" as entirely subjective and not provable or disprovable); *Wellman v. R.H. Fox,* 108 Nev. 83, 825 P.2d 208, 211 (1992) (exaggerated statements are permissible in contexts in which the statements would be interpreted by a reasonable person as mere rhetorical hyperbole).

█ Additionally, one requirement to establish a prima facie case of defamation is that the particular statement must be concerning the Plaintiff. *Chowdhry v. NLVH, Inc.,* 109 Nev. 478, 851 P.2d 459, 462 (1993). The statements referring to the Star magazine and its articles are not of and concerning Flowers.

█ The remaining statements, including Stephanopoulos' comment during the CNBC television program on May 20, 2000,[5] are statements of opinion based

---

**3.** "One of the things is to remember, we'll go back to the Gennifer Flowers statement; I think the [sic] found that tape was doctored and CNN found our [sic], like 19 or 12 different places...." *Larry King Live: Larry King Interview of James Carville* (CNN television broadcast, Jan. 21, 1998).

**4.** The statements alleged to be defamatory are: "[A]nd I came up with a no-comment denial: 'I am not going to comment on that tabloid trash.'" G. Stephanopoulos, *All Too Human: A Political Education* 57 (1999); "'You can't put this crap on the wire.' I said." *Id.;* "Another Thursday, another Star story, another garbage day." *Id.* at 59; "●You're sad about Gennifer, not angry. You

don't know why she changed her story, but you're not going to be diverted." *Id.* at 65; "*The conversation sounded stilted; her questions were leading—maybe the tapes were doctored? It's a setup.* Later investigations by CNN and KCBS would show that the tapes were 'selectively edited,' but there was no getting around the fact that by talking to her on the phone, Clinton had put everything we worked for at risk." *Id.* at 68.

**5.** "Oh, it was absolutely his voice, but they were selectively edited in a way to-to create some-some impression. Now obviously..." *Tim Russert: Tim Russert Interview of George Stephanopoulos* (CNBC television broadcast, May 20, 2000).

upon news reports by CNN and KCBS that audio tapes within Flowers possession had been edited. Such statements cannot be construed as defamatory. In support of this conclusion, throughout his book Stephanopoulos uses italics and punctuation, such as question marks, to identify his personal thoughts and observations, thereby creating the impression that the statements are opinion and not assertions of objective fact.

### E. Actual Malice

Stephanopoulos and Little, Brown & Company argue that Flowers is a public figure and is thus required to show that Defendants acted with "actual malice" to recover for defamation.

 In *New York Times Co. v. Sullivan*, 376 U.S. 254, 279, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court held that a public official cannot recover damages for a defamatory falsehood relating to official conduct unless it is proven that the statement was made with "actual malice." This standard was later extended to public figures. *Curtis Publishing v. Butts*, 388 U.S. 130, 155, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). A public figure is an individual that has either achieved such fame or notoriety that she becomes a public figure for all purposes or an individual who voluntarily injects herself or is drawn into a particular public controversy and thereby becomes a public figure for a limited purpose. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). It is clear that Flowers is at least a limited purpose public figure and therefore is required to show "actual malice" to recover under her claims for defamation. A public figure may recover for an injury to reputation only "on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz* 418 U.S. at 342, 94 S.Ct. 2997. "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S., 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

Since Flowers' claims are either barred by the applicable statute of limitations or the statements at issue are not actionable, the Court need not consider at this stage whether Flowers' claims fail for the additional reason that she will be unable to show that either Stephanopoulos or Carville made such statements with "actual malice."

### F. False Light

 Although the State of Nevada has not formally recognized the tort of False Light as a viable cause of action, Nevada courts have made mention of it and appear to acknowledge the possibility for recovery under such a theory. This Court need not address that specific issue, however. Clinton claims that Flowers' false light claim is duplicative of her defamation claim. Generally, a "'false light privacy action differs from a defamation action in that the injury in privacy actions is mental distress from having been exposed to public view, while the injury in defamation actions is damage to reputation.'" *People for the Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 110 Nev. 78, 867 P.2d 1121, 1125, n. 4 (1994) (citation omitted), *withdrawn*, 111 Nev. 431, 894 P.2d 337 (1995). When claims for invasion of privacy false light, are based on the same factual allegations as those of a simultaneous libel claim, they are superfluous and must be dismissed. *Couch v. San Juan Unified School Dist.*, 33 Cal.App.4th 1491, 39 Cal.Rptr.2d 848, 856 (1995). Although Nevada courts have made no such pronouncement, such a rule serves to assist the Court in clarifying issues for trial as well as eliminating redundant causes of action. Here the factual basis for Flowers' false light claim is the same as her defamation claim, and dismissal is warranted.

### G. Public Disclosure of Private Facts and Invasion into Seclusion

 A cause of action for the public disclosure of private facts has been recog-

nized in Nevada. *Montesano v. Donrey Media Group*, 99 Nev. 644, 668 P.2d 1081, 1084 (1983) (citing *Forsher v. Bugliosi*, 26 Cal.3d 792, 163 Cal.Rptr. 628, 608 P.2d 716 (1980)). To recover under such a claim Flowers must show that "a public disclosure of private facts has occurred which would be offensive and objectionable to a reasonable person of ordinary sensibilities." *Montesano*, 668 P.2d at 1084. In her Complaint, Flowers does not specifically identify what private facts were disclosed, nor does she provide information as to who disclosed them, or when or where. Such allegations are impermissibly vague and inadequate to support a claim for relief.

■ The same is true for Flowers' vague claim of invasion into seclusion, where she simply alleges that during the period leading up to and during the Clinton Administration, her residence had been broken into and she claims to have been threatened. Moreover, Flowers' claims based on these alleged events are barred by the applicable statute of limitations. In Flowers' book, *Sleeping with the President: My Intimate Years With Bill Clinton*, published in 1998, Flowers discusses two unlawful entries into her apartment allegedly occurring in 1991. At oral argument, Flowers conceded that her claims for public disclosure of private facts and invasion into seclusion would be timely only if this Court recognized such claims as continuing violations. Having already concluded that use of the continuing violation theory is unavailable to support Flowers' claims for defamation, the Court similarly finds it unavailing as to Flowers' claims for public disclosure of private facts and invasion into seclusion.

### H. Civil Conspiracy

■ Flowers' civil conspiracy claim is derivative of her claims for defamation. A civil conspiracy has been defined as:

A combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for

the purpose of harming another which results in damage… the gist of the action is not the conspiracy charge, but the 'independent' tort working damage to the Plaintiff.

*Newton v. Uniwest Financial Corp.*, 802 F.Supp. 346, 355 (D.Nev.1990) (quoting *Doleman v. Meiji Mutual Life Ins. Co.*, 727 F.2d 1480, 1483, n. 3 (9th Cir.1984)), *aff'd*, 967 F.2d 340 (9th Cir.1992). Having concluded that Flowers' claims are either barred by the applicable statute of limitations or otherwise not actionable, Flowers' remaining claim for civil conspiracy cannot be sustained. *Newton*, 802 F.Supp. at 355; *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 984 P.2d 164, 165, 168 (Nev.1999).

Though the Court concludes it is unnecessary to resolve the issue at this time, this Court finds it highly unlikely that Flowers' civil conspiracy claim is timely brought. If this Court were to apply the statute of limitations of another jurisdiction based upon Nevada's borrowing statute, such as the District of Columbia, where the conspiracy is alleged to have taken place, Flowers' claim would be untimely since the District of Columbia has a one year statute of limitations for such actions. D.C.Code Ann. § 12–301(4) (1999).

If this Court were instead to apply the Nevada statute of limitations for civil conspiracy, the limitations period would be four years and is discovery based. "[A]n action for civil conspiracy accrues when the plaintiff discovers or should have discovered all of the necessary facts constituting a conspiracy claim." *Siragusa v. Brown*, 114 Nev. 1384, 971 P.2d 801, 807 (1998). Generally this issue is a question of fact for the trier of fact. *Id.* at 806. "The time of discovery may be decided as a matter of law only where uncontroverted evidence proves that the plaintiff discovered or should have discovered the fraudulent conduct." *Id.* (citing *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307 (9th Cir.1992)). Although, this Court can-

not conclude as a matter of law that Flowers should have discovered the facts constituting her civil conspiracy claim outside of the applicable statute of limitations period, it appears that Flowers was aware of sufficient facts no later than 1994 with the publication of Carville's book which made repeated references to the "War Room."

### I. Pleading Special Damages

Both Carville and Clinton argue in their Motions to Dismiss that Flowers has not pled special damages with the required degree of specificity. In response, Flowers filed a Motion for Leave to Amend the First Amended Complaint. The proposed Second Amended Complaint contains additional and more specific allegations as to the alleged special damages suffered by Flowers but contains no other changes.[6] Having already concluded that Flowers' claims against Carville, Stephanopoulos, Little, Brown & Company and Clinton are not actionable, this Court need not address the issue of special damages. The more specific pleading of special damages would be irrelevant to the ability of Flowers to recover against the Defendants.

### J. Leave to File a Third Amended Complaint

Having determined that Flowers' claim for defamation arising out of the statement made by Stephanopoulos during the CNBC television program on May 20, 2000, is not defamatory, granting Flowers leave to file a Third Amended Complaint would be futile.[7]

### V. CONCLUSION

IT IS THEREFORE ORDERED that Clinton's Motion to Dismiss (Doc. # 17) is GRANTED.

---

6. Such changes are found in ¶ 22 of the Proposed Second Amended Complaint appended to Flowers' Motion for Leave to Amend the First Amended Complaint.

IT IS FURTHER ORDERED that Carville's Motion to Dismiss (Doc. # 18) is GRANTED.

IT IS FURTHER ORDERED that Stephanopoulos and Little, Brown & Company's Motion to Dismiss (Doc. # 26) is GRANTED.

IT IS FURTHER ORDERED that Flowers' Motion for Leave to Amend the First Amended Complaint (Doc. # 65) is DENIED.

IT IS FURTHER ORDERED that Flowers' Motion for Leave to File a Third Amended Complaint (Doc. # 96) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court shall forthwith enter judgment in favor of Defendants and against Plaintiff.

---

7. Such changes are found in ¶ 16 of the Proposed Third Amended Complaint appended to Flowers' Motion for Leave to File a Third Amended Complaint.