This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Paul Facinelli, appeals from the decision of the Lorain County Court of Common Pleas, which granted summary judgment to appellee/cross-appellant, Jonathan Rosenbaum, dismissing appellant's defamation claim against him with prejudice. The trial court did not provide judgment regarding Rosenbaum's counterclaim in the case. Rosenbaum, appeals from the decision of the Lorain County Court of Common Pleas, which granted summary judgment to cross-appellees, The Chronicle Telegram (" the Chronicle"), Andy Young, A. Cooper Hudnutt, and Arthur D. Hudnutt, dismissing Rosenbaum's defamation claims against them with prejudice. The cases being appealed were consolidated at the trial level and have remained so for their appellate review.
 I. {¶ 2} On May 11, 1998, Paul Facinelli, a columnist for the Chronicle, filed a defamation claim against Jonathan Rosenbaum, a Lorain County assistant prosecutor, in Cuyahoga County Court of Common Pleas case number 354796. Facinelli's claim was based on a letter Rosenbaum sent to the Association of Women in Communications, Inc. ("WIC") concerning a series of articles Facinelli wrote on a local criminal case Rosenbaum had personally prosecuted for the county. On June 12, 1998, Rosenbaum filed an answer and a defamation counterclaim to the case. Rosenbaum also joined the Chronicle, its publishers, and Facinelli's editor as new parties-defendants to his counterclaim. On August 25, 1998, the Cuyahoga County Court of Common Pleas dismissed, without prejudice, Rosenbaum's counterclaims against the new parties-defendants. Facinelli's and Rosenbaum's claims against each other remained pending in that case.
 {¶ 3} On October 9, 1998, Rosenbaum refiled his defamation claims against the Chronicle, Andy Young, A. Cooper Hudnutt, and Arthur D. Hudnutt, in Lorain County Court of Common Pleas case number 98 CV 121951. The two cases proceeded separately in Cuyahoga and Lorain Counties. On September 17, 1999, the older Cuyahoga County case between Facinelli and Rosenbaum was transferred to Lorain County and assigned case number 99 CV 124162. On December 29, 1999, that case was consolidated with the case between Rosenbaum and the Chronicle, Andy Young, A. Cooper Hudnutt, and Arthur D. Hudnutt, case number 98 CV 121951.
 {¶ 4} The cases proceeded together and on February 26, 2001, the trial court entered its initial judgment with regard to them. For case number 98 CV 121951, the trial court granted summary judgment in favor of A. Cooper Hudnutt and Arthur D. Hudnutt, dismissing Rosenbaum's claims against them with prejudice. The trial court also deferred any ruling as to the defendants' remaining summary judgment motion to allow Rosenbaum to file a further statement of claims, including a dated list of the allegedly defamatory articles. Rosenbaum also filed an amended and supplemental complaint, and a supplemental further statement of claims before the trial court completed its second judgment entry. For case number 99 CV 124162, the trial court granted summary judgment in favor of Rosenbaum, dismissing Facinelli's claim with prejudice. The trial court did not render judgment on Rosenbaum's counterclaim against Facinelli, leaving the case pending as to that issue.
 {¶ 5} On July 20, 2001, the trial court entered its second judgment regarding the consolidated cases. For case number 98 CV 121951, the trial court granted summary judgment in favor of each of the defendants and against Rosenbaum on all his remaining claims in the case. The trial court dismissed the case in its entirety with prejudice. For case number 99 CV 124162, the trial court made no additional judgment, leaving Rosenbaum's counterclaim against Facinelli pending in that case.
 {¶ 6} As a result of the trial court's above judgments, Facinelli appealed the orders for case number 99 CV 124162, and Rosenbaum appealed the orders for case number 98 CV 121951.
 II. {¶ 7} Before reaching the merits of this appeal and cross-appeal, this Court must determine whether it has jurisdiction to review the orders from which the parties appeal. Section 3(B)(2), Article IV of the Ohio Constitution limits this Court's appellate jurisdiction to the review of final judgments of lower courts. For a judgment to be final and appealable, it must satisfy the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). Chef Italiano Corp. v. Kent State Univ. (1989),44 Ohio St.3d 86, 88. R.C. 2505.02 provides, in pertinent part:
 {¶ 8} "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is :
 {¶ 9} "(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment[.]"
 {¶ 10} To be a final, appealable order, the order must affect a substantial right. R.C. 2505.02. R.C. 2505.02(B)(1). A substantial right is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1).
 {¶ 11} Because the appeals now before this Court involve two consolidated cases, with multiple claims and multiple parties, and the trial court's orders disposed of fewer than all claims and parties, Civ.R. 54(B) is applicable here. Civ.R. 54(B) provides in relevant part:
 {¶ 12} "When more than one claim for relief is presented in an action *** or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." However, a finding of no just reason for delay, pursuant toCiv.R. 54(B), does not make appealable an otherwise non-appealableorder. Chef Italiano Corp., 44 Ohio St.3d at 88.
 {¶ 13} This Court first addresses the portions of the trial court's February 22, 2001 and July 20, 2001 orders from which appellant, Facinelli, brings his appeal concerning case number 99 CV 124162. In that case, the trial court granted summary judgment to appellee, Rosenbaum, dismissing Facinelli's claim with prejudice. The trial court did not rule on Rosenbaum's counterclaim in that case. The trial court did not include Rule 54(B) language in relation to its ruling in case number 99 CV 124162. Until the counterclaim is ruled on by the trial court in case number 99 CV 124162, there exists no final appealable order from which this Court can consider Facinelli's assignments of error. Therefore, this Court has no jurisdiction to review appeal number 01CA007908, filed from case number 99 CV 124162, and it must be dismissed.
 {¶ 14} This Court now turns to the portions of the trial court's February 22, 2001 and July 20, 2001 orders from which cross-appellant, Rosenbaum, brings his cross-appeal concerning case number 98 CV 121951. In that case, the trial court granted summary judgment to all the cross-appellees, dismissing all of Rosenbaum's claims with prejudice. No counterclaims were filed in this case. In its July 20, 2001 order, the trial court stated, "Pursuant to Civil Rule 54(B), the Court further concludes that there is now no just reason to delay the entry of a separate judgment for this previously consolidated case. Accordingly, the Court now enters that separate final judgment for Case Number 98 CV 121951." Therefore, appeal number 01CA007896 is properly before this Court for review.
 {¶ 15} Accordingly, Facinelli's appeal is dismissed. This Court will only address Rosenbaum's cross-appeal. Rosenbaum timely appealed and sets forth three assignments of error for review. Rosenbaum's assignments of error have been rearranged for ease of discussion.
 III. THIRD ASSIGNMENT OF ERROR {¶ 16} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT ROSENBAUM'S CLAIMS CONCERNING THE OCTOBER 6-8, 1996 AND MARCH 21, 1997 PUBLICATIONS WERE TIMED BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS."
 {¶ 17} In his third assignment of error, Rosenbaum asserts that the trial court erred in concluding that Rosenbaum's claims concerning the October 6-8, 1996 and March 21, 1997 publications were time barred by the applicable statute of limitations.
 {¶ 18} Because only legal questions are involved, an appellate court will not afford a trial court any special deference when reviewing an entry of summary judgment. Klingshirn v. Westview Concrete Corp. (1996), 113 Ohio App.3d 178, 180. Rather, the appellate court will apply the same standard used by the trial court, and will review the matter de novo. Id.
 {¶ 19} Civ.R. 56(C) provides that summary judgment may be granted only when a court is satisfied that there is no genuine issue as to any material facts, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion that, even viewing the evidence most strongly in favor of the nonmoving party, is adverse to the nonmoving party. State ex rel. Leigh v. State Emp.Relations Bd. (1996), 76 Ohio St.3d 143, 144. The substantive law involved controls which facts are considered material; those factual disputes that have the potential to affect the outcome of a lawsuit are material and would preclude summary judgment, while factual disputes that cannot affect the outcome are deemed irrelevant and will not affect summary judgment. Orndorff v. Aldi, Inc. (1996), 115 Ohio App.3d 632,635, citing Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248,91 L.Ed.2d 202.
 {¶ 20} This Court has previously noted:
 {¶ 21} "A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. As a result, a moving party is entitled to judgment as a matter of law where the nonmoving party failed to come forth with evidence of specific facts on an essential element of the case with respect to which they have the burden of proof." Black v. Cosentino
(1996), 117 Ohio App.3d 40, 43, citing Celotex Corp. v. Catrett (1986),477 U.S. 317, 323, 91 L.Ed.2d 265.
 {¶ 22} The Supreme Court of Ohio has explained the burden allocation involved for moving and nonmoving parties:
 {¶ 23} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis omitted.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
 {¶ 24} In order to sustain an action for defamation, the plaintiff must show: (1) a false and defamatory statement; (2) about the plaintiff; (3) published to a third party without privilege; (4) with fault or negligence by the defendant; (5) that was either defamatory per se or caused special harm to the plaintiff. Akron-Canton Waste Oil, Inc.v. Safety-Kleen Oil Serv., Inc. (1992), 81 Ohio App.3d 591, 601, citing 3 Restatement of the Law 2d, Torts (1977), 155, Section 558. A statement is defamatory per se if it tends to cause injury to a person's reputation, exposes him to public ridicule or shame, or adversely affects a person in their trade or business. Lakota Local School Dist. Bd. of Edn. v.Brickner (1996), 108 Ohio App.3d 637, 647.
 {¶ 25} "[T]he statute of limitations for defamation is one year. R.C. 2305.11(A). Such one-year period begins to run from the time the alleged defamatory words are spoken." Stephenson v. Yellow FreightSystems (Oct. 26, 1999), 10th Dist. No. 99AP-77, citing Haller v.Phillips (1990), 69 Ohio App.3d 574, 577 and Lyons v. Farmers Ins. Groupof Companies (1990), 67 Ohio App.3d 448, 450.
 {¶ 26} Since Rosenbaum filed this suit on October 9, 1998, any claims based on publications made prior to October 9, 1997, are time-barred. Rosenbaum argues that the one-year statute of limitations should not apply here though because the defendants engaged in a continuing course of conduct in publishing the articles and that the defendants should be equitably estopped from asserting that his claims before October 9, 1997, are time-barred.
 {¶ 27} In his first argument, Rosenbaum submits that these articles were published in a continuing series and, therefore, constitute a continuing tort upon which the applicable statute of limitations does not begin to run until the final act or publication is made.
 {¶ 28} "Under a continuing tort theory, the limitations period does not begin to run until the tortious conduct ends. Numerous cases, however, have held that a cause of action for defamation accrues immediately upon the occurrence of the tortious act and this is not appropriate for the continuing violation exception." Flowers v. Carville
(D.Nev. 2000), 112 F. Supp.2d 1202, 1210, citing Flotech Inc. v. E.I.DuPont de Nemours Co. (D.Mass. 1985), 627 F. Supp. 358, 363.
 {¶ 29} This Court declines to adopt a continuing tort theory here.
 {¶ 30} Rosenbaum next argues that defendants should be equitably estopped from asserting that his claims prior to October 9, 1997, are time-barred since they caused his identical claims filed in the Cuyahoga County Common Pleas Court to be improperly dismissed.
 {¶ 31} This Court has previously stated that:
 {¶ 32} "`one cannot justly or equitably lull his adversary into a false sense of security, and thereby cause the adversary to subject a claim to the bar of the statutes of limitations.'" (Citations omitted.)Williams v. Chippewa Roofing (Aug. 20, 1997), 9th Dist. No. 96CA0089.
 {¶ 33} A prima facie case for equitable estoppel requires appellant to prove, inter alia, that he actually relied on a factual misrepresentation of appellee and that such reliance was reasonable and in good faith. See Doe v. Blue Cross/Blue Shield of Ohio (1992),79 Ohio App.3d 369, 379; First Fed. S. L. Assn. v. Perry's Landing,Inc. (1983), 11 Ohio App.3d 135, 145.
 {¶ 34} Equitable estoppel was clearly not proven here, as Rosenbaum has not even alleged any factual misrepresentation on which he relied. Rosenbaum's third assignment of error is overruled.
 FIRST ASSIGNMENT OF ERROR {¶ 35} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT ALL OF THE ALLEGEDLY DEFAMATORY ARTICLES AND STATEMENTS ABOUT WHICH ROSENBAUM COMPLAINS WERE PROTECTED `OPINIONS' AND THUS NOT ACTIONABLE."
 {¶ 36} In his first assignment of error, Rosenbaum asserts that the trial court erred in holding that all of the allegedly defamatory articles and statements about which Rosenbaum complains were protected opinion and thus not actionable. Specifically, this court must review the publications made on October 12, 1997, February 9, 1998, and April 17, 1998.[1]
 {¶ 37} A statement is not defamatory if it is a statement of opinion, because expressions of opinion are generally protected under Section 11, Article I of the Ohio Constitution. Vail v. Plain DealerPublishing Co. (1995), 72 Ohio St.3d 279, 280; DeVito v. Gollinger
(1999), 133 Ohio App.3d 51, 54. "[T]he determination of whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court." Vail, 72 Ohio St.3d at 280, citing Scott v. News-Herald
(1986), 25 Ohio St.3d 243, 250. See, also, Wampler v. Higgins (2001),93 Ohio St.3d 111, 126, 2001-Ohio-1293.
 {¶ 38} In resolving whether an allegedly defamatory statement is protected opinion, a court must consider the totality of the circumstances. Vail, 72 Ohio St.3d at syllabus. "Consideration of the totality of [the] circumstances *** involves at least four factors. First is the specific language used, second is whether the statement is verifiable, third is the general context of the statement and fourth is the broader context in which the statement appeared." Scott,25 Ohio St.3d at 250. "This analysis is not a bright-line test[.] Vail,72 Ohio St.3d at 282. "`[T]he totality of the circumstances test *** can only be used as a compass to show general direction and not a map to set rigid boundaries.'" Id., quoting Scott, 25 Ohio St.3d at 250. See, also, Ollmanv. Evans (D.D.C. 1984), 750 F.2d 970, 979-984.
 {¶ 39} The weight given to any one factor under this inquiry will vary depending on the circumstances of each case. Vail,72 Ohio St.3d at 282. "While necessarily imperfect, these factors *** assist in discerning as systematically as possible what constitutes an assertion of fact and what is, in contrast, an expression of opinion." Ollman,750 F.2d at 979.
 {¶ 40} The three remaining publications here were all either columns or editorials. Rosenbaum complains about three statements in these three publications. In the October 12, 1997 publication entitled, "Rosenbaum Letter Raises More Idle Threats," Rosenbaum complains about one sentence in the twenty-one paragraph column. "Nonetheless, Rosenbaum did not alert defense lawyers before the trial that the tape might help their clients and did not turn it over to them during the trial when the defense asked for witnesses' prior statements to police."
 {¶ 41} In the February 9, 1998 publication entitled, "This Time, Justice is Blind," Rosenbaum cites the following comment by Facinelli:
 {¶ 42} "Not material? Not exculpatory? Please.
 {¶ 43} "No wonder prosecutor Jonathan Rosenbaum took such pains to keep the contents of the tape hidden from the defense. He buried information about its existence among his list of some 50 witnesses. He didn't include the videotape in his list of exculpatory evidence. Apparently, he didn't consider it so.
 {¶ 44} "Watch the videotape and you'll know why he didn't."
 {¶ 45} In the April 17, 1998 publication titled, "McGough Deserved the Rebuke," Rosenbaum cites the following comments as defamatory:
 {¶ 46} "The fairness of Zaleski's ruling should be apparent to everyone, but everyone doesn't include Jonathan Rosenbaum or cop/prosecutor Dennis Will. The two said most emphatically that Smith had a chance to refute Leiby's statements — that he was a suspect in a murder case — at his sentencing. We know now that they were, well, mistaken.
 {¶ 47} "Transcripts of the sentencing hearing show that Leiby never named Smith specifically as a murder suspect. And there's nothing in the transcript about Leiby's private meeting with McGough. Maybe Rosenbaum and Will were too busy to read it.
 {¶ 48} "Nevertheless, Rosenbaum has vowed that the prosecutor's office would appeal Zaleski's ruling. The grounds? Abuse of discretion. Rosenbaum has made no mention of McGough's abuse of her discretion.
 {¶ 49} "That should not surprise us. Pals stick together."
 {¶ 50} The trial court decided as a matter of law that these statements were expressions of opinions as opposed to statements of fact and granted summary judgment in favor of appellees on this basis. This Court reviews the trial court's grant of summary judgment de novo applying the Scott test. Wampler, 93 Ohio St.3d at 130.
 {¶ 51} When considering the totality of the circumstances, this Court finds the most compelling factor here is the context of the statements. "Scott's totality-of-the-circumstances inquiry also includes two distinct `contextual' assessments." Id. at 130, citing Scott,25 Ohio St.3d at 252. One of these is a consideration of the `immediate context' in which the allegedly defamatory statement appears. Ollman,750 F.2d at 983. This Court examines more than simply the alleged defamatory statements in isolation, because the language surrounding the averred defamatory remarks may place the reasonable reader on notice that what is being read is the opinion of the writer. Scott, 25 Ohio St.3d at 252. Put another way, as Judge Starr explained in Ollman, courts should assess "the entire article or column" because "unchallenged language surrounding the allegedly defamatory statement will influence the average reader's readiness to infer that a particular statement has factual content." Ollman, 750 F.2d at 979.
 {¶ 52} In these three publications, it is obvious the writers are expressing personal opinion from the style and tone of the writing used. In the October 12, 1997 article for instance, the publication's first sentence sets the tone for the reader with the tongue-in-cheek, facetious opening of: "Uh-oh, prosecutor Jonathan E. Rosenbaum has read my mind." The other two publications equally contain hyperbole and sarcastic style that is indicative of opinion writing as opposed to factual reporting. Considering the allegedly defamatory statements in the context of the entire columns the average reader would be unlikely to infer that those statements were factual.
 {¶ 53} In addition to examining the allegedly defamatory statements as they appear in context, we also examine "the broader social context into which the statement fits. Some types of writing or speech by custom or convention signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." Ollman,750 F.2d at 983. "This fourth factor focuses, then, not merely on the internal context within which a particular written statement appears, but on the unmistakable influence that certain `well established genres of writing will have on the average reader.'" (Emphasis omitted.) Wampler,93 Ohio St.3d at 131.
 {¶ 54} Here, the allegedly defamatory statements appeared in columns or editorials traditionally known as "the personal opinions of the writer." "[I]t is well understood that editorial writers and commentators frequently `resort to the type of caustic bombast traditionally used in editorial writing to stimulate public reaction,'" Ollman, 750 F.2d at 984, quoting Natl. Rifle Assn. v. Dayton Newspapers,Inc. (S.D.Ohio 1983), 555 F. Supp. 1299, 1309. Therefore, this Court agrees with the trial court that these statements are nonactionable expressions of opinion. Rosenbaum's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 55} "THE TRIAL COURT ERRRED AS A MATTER OF LAW IN HOLDING THAT ROSENBAUM HAD NOT SUFFICIENTLY DEMONSTRATED A JURY QUESTION OF WHETHER FACINELLI AND YOUNG, AND BY EXTENSION THE NEWSPAPER, PUBLISHED FALSE AND DEFAMATORY STATEMENTS ABOUT ROSENBAUM WITH RECKLESS DISREGARD FOR THEIR TRUTH OR FALSITY."
 {¶ 56} Based on this Court's disposition of Assignments of Error 1 and 3, Rosenbaum's second assignment of error is moot. See App.R. 12(A)(1)(c).
 IV. {¶ 57} Accordingly, Rosenbaum's three assignments of error are overruled. The judgment of the trial court is affirmed.
 {¶ 58} The Court finds that there were reasonable grounds for this appeal.
 {¶ 59} We order that a special mandate issue out of this Court, directing the , County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
 {¶ 60} Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
BATCHELDER, J. and SLABY, P.J., concurs.
[1] Although there were seven publications that were not time-barred, (October 12, 1997, February 9, 1998, April 17, 1998, June 17, 1998, June 21, 1998, July 12, 1998, and July 13, 1998). The trial court ruled that the June 17, June 21, July 12, and July 13, 1998 articles were not part of Rosenbaum's complaint. The trial court held: "Moreover, plaintiff has repeatedly insisted that he alleged every defamation he asserts for this case in the third party claim he filed in Cuyahoga County Common Pleas Court Case No. 354796 on June 12, 1998. Since he could not then forecast future claims, his claims here cannot assert defamation published after June 12, 1998." Rosenbaum has not contested this ruling on appeal. Furthermore, this Court held in assignment of error three that all publications prior to October 9, 1997 are time-barred. Thus, only three publications remain for review: October 12, 1997, February 9, 1998, and April 17, 1998.